746 F.2d 185
 Celeste R. DEARY, Appellant in No. 83-3408,
v.
THREE UN-NAMED POLICE OFFICERS, John Doe, Richard Roe & Jone
Snow; Department of Public Safety, F.B.I.; Agent
Ray Patton, & Govt. of the V.I., Appellees.
Celeste R. DEARY, Appellant in No. 83-3408,
v.
UNITED STATES of America.
Celeste R. DEARY
v.
THREE UN-NAMED POLICE OFFICERS, John Doe, Richard Roe & Jone
Snow; Department of Public Safety, F.B.I.; Agent
Ray Patton, & Govt. of the V.I.
Appeal of GOVERNMENT OF THE VIRGIN ISLANDS, in 83-3409.
 Nos. 83-3408, 83-3409.
 United States Court of Appeals,
Third Circuit.
 Argued April 24, 1984.
Decided Oct. 12, 1984.
As Amended Oct. 24, 1984.
Rehearing Denied Nov. 8, 1984.
 
 Alexander A. Farrelly (Argued), Birch, deJongh & Farrelly, Charlotte Amalie, St. Thomas, U.S. V.I., for appellant.
 Edward A. Wascoe (Argued), Daryl C. Barnes (Argued), V.I. Dept. of Law, Charlotte Amalie, St. Thomas, U.S. V.I., for appellee Govt. of the V.I.
 Gail Killefer (Argued), Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellees Patton and U.S.
 Andrew L. Capdeville (Argued), Asst. U.S. Atty., Charlotte Amalie, St. Thomas, U.S. V.I., John E. Stout, Grunert, Stout & Smock, Charlotte Amalie, St. Thomas, U.S. V.I., for appellees Evans, Tuckett, Turnbull, & Hodge.
 Joseph Bruce Wm. Arellano (Argued), Roger L. Campbell, Campbell & Arellano, Charlotte Amalie, St. Thomas, U.S. V.I., for appellee Bruce Campbell.
 Before SEITZ, Chief Judge, and GARTH and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 Celeste R. Deary brought two civil actions alleging a number of common law causes of action and violations of her civil rights, all due to her claimed unreasonable arrest and detention by various defendants. Her amended complaint named as defendants the Government of the Virgin Islands, five individual members of the Virgin Islands Department of Public Safety, and an FBI agent. All of the defendants moved for dismissal based upon Deary's failure to state a claim upon which relief can be granted, or, alternatively, summary judgment on the ground of qualified immunity. The district court granted summary judgment for each defendant and dismissed Deary's case.
 
 
 2
 We conclude that the district court erred in granting summary judgment on the section 1983 and other common law tort claims on the ground of qualified immunity because the determination of probable cause, which is a necessary predicate to the qualified immunity determination, was for the jury on the record of this case.
 
 
 3
 However, we conclude that Deary's failure to comply with the procedural provisions of the Virgin Islands Tort Claims Act ["VITCA"] is fatal to her claim against the Government of the Virgin Islands.
 
 
 4
 Finally, we conclude that FBI Agent Patton did not violate state or federal law, thus affording him the protection of qualified immunity established under controlling precedents.
 
 
 5
 We will therefore affirm the judgment of the district court as to FBI Agent Patton, the United States Government, and the Government of the Virgin Islands, although in the case of the Virgin Islands we do not assign the same reasons for that action as those stated by the district court judge. See Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1145 n. 1. (3d Cir.1983) ("An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment."). We will reverse the grant of summary judgment as to police officers Evans, Tuckett, Turnbull, Campbell, and Hodge, and remand their case for further proceedings consistent with this opinion.
 
 I.
 
 6
 The facts leading up to Deary's arrest are not in dispute. On August 1, 1978, a Citibank in Charlotte Amalie was robbed by a black female who was photographed by the bank's surveillance camera. One of these photographs appeared in local newspapers and was seen there by a Virgin Islands police officer who thereafter relied on the newspaper photograph in deciding to arrest Deary.
 
 
 7
 According to the allegations in Deary's amended complaint, while Deary was jogging to work early in the morning of August 4, 1978, she was accosted by three police officers (later identified as Evans, Tuckett, and Turnbull), arrested, taken to police headquarters, read her rights, and then extensively interrogated by two other officers (Hodge and Campbell) and an FBI agent (Patton)[1] about her involvement in the bank robbery that had taken place three days earlier. Deary was released on bail later that day, and two months later, on October 12, 1978, all charges against her were dropped when another suspect was apprehended.
 
 
 8
 Deary then brought two actions for damages, one based on 42 U.S.C. Sec. 1983 and the Virgin Islands Tort Claims Act, and the other based on the Federal Tort Claims Act.[2] Her 1983 action claimed violation of her constitutional, statutory, and common law rights, and included charges of common law torts of false arrest, false imprisonment, malicious prosecution, abuse of process, and infliction of emotional distress. The original complaint, filed on August 4, 1980 (two years to the day after the arrest) named "three unknown police officers" as defendants. The amended complaint, filed October 7, 1981, was the first pleading to name Officers Evans, Tuckett, Turnbull, Campbell, and Hodge individually. Each of those defendants, as well as the Government of the Virgin Islands, alleged the statute of limitations bar as an affirmative defense in answering Deary's amended complaint.[3]
 
 
 9
 The district court judge thereafter granted summary judgment as to each defendant, reasoning that under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), government officials were entitled to qualified good faith immunity if their actions were within recognized legal bounds. Having found that Deary's arrest was based on probable cause, the judge determined that the defendants were protected by qualified immunity, and dismissed Deary's claims, under section 1983 and for common law torts.[4]
 
 II.
 
 10
 Evans, Tuckett, Turnbull, Campbell and Hodge
 
 A. Probable Cause
 
 11
 Evans, Tuckett, and Turnbull were the arresting officers named in Deary's amended complaint. As to them, the district court judge concluded that "the factors available to the defendants at the time of her arrest, i.e., the strong likeness of plaintiff to the photographs and/or the newspaper reprint, and what appeared to be flight, was sufficient to warrant a man of reasonable caution to believe that plaintiff had committed the robbery," thus giving the defendants probable cause to arrest the plaintiff. (Dist.Ct.Op. at 16). As to the supervising officers, Campbell and Hodge, the district court concluded that there was "sufficient probable cause for them to maintain plaintiff under arrest." (Id. at 19). Based on these findings, the judge reasoned that all five defendants were protected by qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and he granted summary judgment in their favor. We conclude that the district court erred in disposing of this case in that manner.
 
 
 12
 In Patzig v. O'Neil, 577 F.2d 841 (3d Cir.1978), parents of a young woman who apparently committed suicide after being arrested for driving while intoxicated, brought a section 1983 action against city and city police employees, alleging various constitutional and common law violations including false arrest. The district court granted the defendants' motion for a directed verdict at the end of the plaintiffs' case. This Court affirmed as to all defendants except the City of Philadelphia, limiting the reversal as to that defendant solely to the Patzigs' false arrest claims.[5] In analyzing the Patzigs' constitutional claim, the Court determined that "whether or not plaintiffs have any constitutional claim at all must stand or fall on whether the arresting police officer had probable cause to arrest Patzig." Id. at 848.
 
 
 13
 The question we were required to answer in Patzig was whether the issue of probable cause (or the lack thereof) should have been allowed to go to the jury. We concluded that the question of probable cause in a section 1983 damage suit is generally one for the jury, reasoning as follows:
 
 
 14
 It is true that a magistrate or judge makes probable cause determinations in the criminal context. But that fact is not dispositive here. In a civil case, whether an issue must be submitted to a jury depends on an historical analysis of whether it would have been cognizable at law or in equity.... "If a new cause of action is created by Congress [such as a Sec. 1983], and nothing is said about the mode of trial, the courts must look to the nearest historical analogy to decide whether there is a right to a jury."
 
 
 15
 In the case at bar, the closest historical analogy is, of course, an action at common law for false arrest or false imprisonment. See Prosser on Torts Sec. 12, at 54 (3d ed. 1964). Such a tort action is a "lineal descendent of the old action of trespass." Id. As such, it is clear that a "constitutional tort" action grounded in false arrest comes within the seventh amendment's proscription. The question of whether a police officer's warrantless arrest was without probable cause is the key issue in such a case. We would conclude, therefore, that it is a question for the jury.
 
 
 16
 577 F.2d at 848.
 
 
 17
 On a motion for a directed verdict, the Patzig Court asked, "whether a reasonable jury, on the evidence adduced by the plaintiffs and drawing all inferences in the plaintiffs' favor, could have reasonably found that the arresting officer did not have probable cause to arrest Patzig." Id. We concluded that, although a "good deal of circumstantial evidence [existed] which would support a finding of probable cause," "the evidence of lack of probable cause was sufficient to allow the issue to go to the jury." Id.
 
 
 18
 This Court recently reaffirmed the principles of Patzig in Losch v. Borough of Parkesburg, Pennsylvania, 736 F.2d 903 (3d Cir.1984). Losch involved an appeal from a grant of summary judgment for the defendant police officers in a section 1983 suit. Losch, who had written a letter to a police officer defendant complaining of his actions in "picking on [his] wife and children" and stating an intention to report these actions to the district attorney's office, claimed violations of his constitutional rights. Losch's claim was based on the defendant police officer's having initiated criminal prosecution against him "maliciously and without probable cause." The district court found no genuine dispute of material fact and no evidence of malice or bad faith on the part of the defendant police officers. On appeal, this Court "evaluate[d] for some minimal showing of credibility any evidence that the defendants did not have probable cause to charge Losch under the two Pennsylvania statutes," 736 F.2d at 908, and concluded that the summary judgment record raised credibility issues--relevant to the reasonableness of the defendants' probable cause determination--which should have been presented to the jury.
 
 
 19
 Guided by our prior precedents in Patzig and Losch, and their analyses which are binding upon us, we are here required to decide whether summary judgment in Deary's case could properly have been granted on the issue of probable cause. That is, taking all of Deary's allegations as true and resolving all inferences in her favor, whether a reasonable jury could find that the police officers could not have reasonably believed that Deary committed the City Bank robbery, i.e., did not have probable cause for her arrest. Like the Patzig case, we too are faced with substantial circumstantial evidence which would sustain a finding of probable cause: the alleged similarity in appearance and resemblance in physical characteristics of Deary to the suspect pictured in the bank surveillance photographs, as well as Deary's appearance of flight from the arresting officers on the day of her arrest.
 
 
 20
 Nevertheless, despite considerable evidence which, in our view, would lead to a finding of probable cause, in light of Patzig, we cannot say that the trial judge, on the record before him, could summarily decide the issue of probable cause. To the extent that the presence or absence of probable cause depended on the resemblance of Deary to the bank surveillance photographs taken at the time of the robbery, the question necessarily becomes a factual one for jury determination. Nor does the fact that Deary's physical characteristics resembled that of the woman who robbed the bank[6] change our conclusion that those facts, too, were for jury consideration. Moreover, even though Deary concedes that she was "jogging" when the officers apprehended her, whether that activity gave the reasonable perception of flight is also a matter which must be left to the judgment of the jury to take into account together with such considerations as the speed at which she was "jogging" (running), her overall demeanor, and the other aspects of her appearance.
 
 
 21
 To grant judgment for the defendant police officers at this juncture, therefore, would be to usurp the role which a jury must play in fact finding--here, determining the ultimate fact of probable cause or the lack of it.[7] See also B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d 7, 10 (1st Cir.1984) ("... whether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case, a question to be resolved by the trier of fact."); Reeves v. City of Jackson, 608 F.2d 644, 651 (5th Cir.1979) (probable cause presented jury question on record of this case); Gilker v. Baker, 576 F.2d 245, 246-47 (9th Cir.1978) (existence of probable cause is for jury where reasonable persons might reach different conclusions about the facts).
 
 
 22
 We do not hold that every civil case involving an issue of probable cause must be tried to a jury and cannot be resolved on summary judgment. See Scott v. Donovan, 539 F.Supp. 255, 257 (N.D.Ga.1982). To the contrary, where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate. Cf. Losch, supra. Here, we hold only that on the record thus far developed, reasonable minds could differ as to whether the police officers who apprehended and then interrogated Deary had probable cause to do so based on the information which was then available to them. The resolution of this question is, as we have stated, one which the jury and not the judge must make in the instant context under our precedents. We therefore reverse the grant of summary judgment.
 
 B. Qualified Immunity
 
 23
 Even if the police officers lacked probable cause to arrest and detain Deary, they could still avoid section 1983 liability if they could demonstrate their good faith in so doing. See Black v. Stephens, 662 F.2d 181, 193 (3d Cir.1981); B.C.R. Transport Co., Inc., supra, 727 F.2d at 10. The doctrine of qualified immunity--which each of the individual defendants raised as a defense and upon which the district court judge relied in granting summary judgment in their favor--shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 24
 The question then becomes: would or should a reasonable person in the shoes of the individual police officer have known that he was violating another's [Deary's] clearly established constitutional rights by taking her into custody on the basis of his then-known information. In answering this question, we are mindful of this Court's admonition that "[i]f an arrest lacks probable cause for its support it is, objectively speaking, in violation of clearly established law." Losch, supra, at 910, quoting Trejo v. Perez, 693 F.2d 482, 488 n. 10 (5th Cir.1982). See B.C.R. Transport Co., Inc., supra, 727 F.2d at 10 (holding that the reasonableness of the police officer's conduct presented a jury issue); Black, supra, 662 F.2d at 193 & n. 12 (jury could not find police officer liable if he believed in good faith that the arrest was valid and if that belief was a reasonable one).
 
 
 25
 Thus, on the facts and circumstances of this case, a finding of probable cause--which would preclude the finding of a constitutional violation for section 1983 purposes--and a finding of entitlement to qualified immunity--which would preclude liability even if the defendants had violated Deary's constitutional rights--both turn on the reasonableness of the defendant police officers' actions in arresting and detaining Deary--a determination which we have held presents a question of fact for the jury.
 
 
 26
 Inasmuch as the reasonableness of the actions taken by the defendant police officers will determine the question of probable cause, it appears to us that although the doctrines which we have been discussing may be analytically different, see Losch, supra; Barker v. Norman, 651 F.2d 1107, 1122-27 (5th Cir.1981), both depend upon the jury's answer to the question: was probable cause present? If the jury determines that it was, then of course, Deary did not have her civil rights violated. At that point, there would seem to be little utility in carrying the analysis further to consider an issue of qualified immunity, since no section 1983 violation to which immunity could have been pleaded would have occurred. We need not tarry at this point, however, to discuss the niceties of a dual analysis theory because it is clear that the issue of the defendants' liability in this case will be decided under both theories by a jury verdict establishing the presence or absence of probable cause. Because the district court pretermitted this issue by deciding as a matter of law that the defendant police officers had probable cause to arrest Deary, instead of permitting the jury to resolve that issue, we are obliged to reverse the district court's judgment in this respect.
 
 
 27
 We note also that the jury's answer to the probable cause question will not only dispose of the section 1983 cause of action asserted by Deary, but will also dispose of the common law causes of action, all of which depend upon the same factual determination involving the presence or absence of probable cause.[8]
 
 III.
 Government of the Virgin Islands
 
 28
 Deary's amended complaint alleged common law tort violations against the Government of the Virgin Islands ["Government"], and was brought pursuant to the Virgin Islands Tort Claims Act, 33 V.I.C. Secs. 3401-3415 ["VITCA"]. The district court judge dismissed the claims as to the Government based on its finding that the police officers--employees or agents of the Government--violated no law and were entitled to the protection of the qualified immunity doctrine. In such a circumstance, the Government cannot be held liable. We will uphold the district court decision to dismiss the claims as to the Virgin Islands, but we base our decision on reasons different from those relied upon by the district court.
 
 
 29
 No tort action may be brought against the Government of the Virgin Islands without consent of the Virgin Islands legislature, 48 U.S.C. Sec. 1541, and the only relevant consent of the legislature lies in VITCA. In section 3408 of Title 33, the Government waived its immunity from liability in certain cases, but only if "the claimant complies with the provisions of this chapter." Section 3409 requires a claimant making allegations such as Deary makes, to file a notice of claim or notice of intention to file a claim "within ninety days after the accrual of such claim." Thus, for Deary's claim to have been timely, she was obliged to file under VITCA by November 2, 1978. However, Deary did not file any notice of claim until December 28, 1978, which was 146 days after she was arrested. The district court judge, however, held that Deary's cause of action did not accrue until October 12, 1978, the date on which the criminal proceeding against Deary was finally dismissed, and that her notice of claim filed December 28, 1978 was therefore timely.
 
 
 30
 Except for Deary's malicious prosecution claim, all of Deary's remaining common law claims--false arrest, false imprisonment, abuse of process, and infliction of emotional distress--accrued when Deary "knew or had reason to know of the injury that constitutes the basis of this action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.1982) (per curiam). That date was the date of her arrest, August 4, 1978.[9] Since Deary did not file the appropriate notice of claim within ninety days of August 4, 1978, her cause of action under VITCA is barred as to those claims.
 
 
 31
 Deary's claim for malicious prosecution,[10] on the other hand, did not accrue until the criminal proceedings were dismissed on October 12, 1978, and as such, Deary's claim against the Virgin Islands for malicious prosecution was timely because her notice of claim was filed on December 28, 1978, within ninety days of the accrual of her malicious prosecution claim. However, Deary neither pleaded nor furnished any facts that would prove or tend to prove the three elements necessary to sustain a malicious prosecution claim under VITCA.[11]
 
 
 32
 The only reference made by Deary in any of her submissions or depositions to malicious prosecution is to be found in naked conclusory allegations in Deary's amended complaint (paragraphs 10, 14, 28). Her complaint states no more than that "plaintiff was a victim of malicious prosecution." (p 10). Paragraphs 14 and 28 of the amended complaint only mention the term "malicious prosecution" without more. Reading all of the averments in the record most favorably to Deary, no facts appear, nor have any even been alleged, that would suggest that the arresting officers had "a purpose other than that of bringing an offender [Deary] to justice." No affidavit and none of the depositions of any party advert to any facts with regard to a defendant initiating the institution of a criminal proceedings against Deary for a malicious purpose.[12] Thus, Deary's amended complaint itself is deficient in not even alleging the elements necessary to state such a claim. Accordingly, treating Deary's allegations as true, on such a record a motion to dismiss for failure to state a cause of action should have been granted as to any malicious prosecution claim which Deary asserted.
 
 
 33
 The district court, however, treated all of the motions made, whether they were motions to dismiss under Fed.R.Civ.P. 12(b)(6) or summary judgment motions under Fed.R.Civ.P. 56, as motions for summary judgment. In doing so, the district court used the standard for summary judgment found in Scott v. Plante, 532 F.2d 939, 945 (3d Cir.1976):
 
 
 34
 Summary judgment may only be granted if, taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.
 
 
 35
 We too have scoured the record, including all of the depositions filed,[13] and our independent review, drawing all inferences in Deary's favor and recognizing that the burden of proof rests on the defendants, reveals that there are no genuine issues disputed as to any material fact respecting the claim made by Deary of malicious prosecution. Indeed, there is no testimony in any deposition of Deary or in any affidavit filed in opposition to the defendants' motions for summary judgment which even suggests that a defendant had maliciously prosecuted Deary by initiating the institution of criminal proceedings against her. Therefore, we are satisfied that even if Deary had stated a sufficient malicious prosecution claim in her amended complaint, which we conclude she did not, the defendants on this record were nevertheless entitled to summary judgment.
 
 IV.
 FBI Agent Patton
 
 36
 Defendant Patton was named in the original complaint filed by Deary on August 4, 1980. As to Patton, therefore, Deary's action is not barred by the statute of limitations. We therefore address the qualified immunity defense raised by Patton and accepted by the district court judge in granting summary judgment for the defendant.
 
 
 37
 Agent Patton's involvement in Deary's arrest was limited to questioning her once she was brought in to the police station. Patton was not responsible for nor present when Deary was arrested. According to affidavits submitted on Deary's behalf and her own depositions, Patton's role was limited to (1) supervising the questioning of Deary at the police station, at which time he was "overbearing," and (2) seeking a search warrant for Deary's home, which request was denied. Reading all of her averments most favorably to Deary, nothing suggests that Patton had anything to do with her arrest, nor was he responsible for initiating any criminal proceedings against her, maliciously or otherwise, or for prolonging her detention. In short, nothing which Deary alleges as to Patton's actions fell outside recognized legal norms and standards.
 
 
 38
 The reasoning of Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), dealing with qualified immunity for high executive officials, is instructive. The Harlow Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. The Fifth Circuit applied this test to a section 1983 action against a police officer for false arrest in Saldana v. Garza, 684 F.2d 1159 (5th Cir.1982), and held it to be the appropriate test to apply to a Bivens-type suit against a federal law enforcement agent for false arrest and false imprisonment. Since the record before the district court offered no suggestion that Patton's conduct violated "clearly established law," the district court concluded and we agree that the grant of summary judgment as to Patton was proper.[14]
 
 V.
 
 39
 In their respective motions, the defendant police officers did not rely on, nor raise, the statute of limitations as a ground for summary judgment. The defendants' motions, styled as Motions for Partial Summary Judgment, instead focused on claims that qualified immunity absolved their actions. As a consequence, the district court judge had no reason to, and did not, address the statute of limitations defense which was raised by each of the defendants in their original answers to the complaint.
 
 
 40
 Sergeant Campbell, one of the police officer defendants, however, did argue in his brief on appeal that the statute of limitations barred Deary's claims against him. In addition, counsel for all the defendants addressed the statute of limitations at oral argument. At that time it was conceded by counsel for Evans, Tuckett, Turnbull, and Hodge (the four other police officer defendants) that an issue of notice--which is an essential element with respect to Fed.R.Civ.P. 15 amendments as it interacts with the appropriate statute of limitations--was not resolved in the record.[15] We are thus faced with the fact that the statute of limitations, which has been raised as a defense but not pressed by all defendants before us, will undoubtedly be advanced before the district court on remand--most probably as the ground on which summary judgment should issue. Because the defendant Campbell has raised this issue in his brief, an issue which we must meet, and because we can anticipate that the district court will be called upon to rule on whether Deary's action was timely brought, not only as to Campbell but as to the other individual police officers, we underscore at this time the relevant principles bearing on the statute of limitations issue.
 
 A.
 
 41
 We have been advised that at least one decision of the Virgin Islands district court in an unrelated case purports to apply a six-year statute of limitations to a 1983 action involving claims of false arrest. See Webster v. Government of the Virgin Islands, 17 V.I. 498 (D.V.I.1980) (Christian, C.J.). That opinion rests its decision on the ground that section 1983 suits, which did not exist at common law, are covered by the six-year period provided in 5 V.I.C. Sec. 31(3)(B), which applies to "causes of action where liability would not exist but for the statute." Slip op. at 6. That opinion might well influence any decision which the district court might be called upon to make with respect to the limitations issue in this case, even though we recognize that this court's precedents would appear to be in conflict with that analysis.
 
 
 42
 This Court has held that "[s]ince the Civil Rights Acts contain no statute of limitations, the limitation to be applied [in a section 1983 action] is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." Polite v. Diehl, 507 F.2d 119, 122 (3d Cir.1974) (en banc). Thus, had Deary's action been brought seeking the same relief under state law as she seeks by her 1983 claim, it would most resemble a cause of action for false arrest, false imprisonment, or malicious prosecution. Indeed, these very common law claims are actually made in her amended complaint. Thus, as we analyze her causes of action, either the three-year period of 5 V.I.C. Sec. 31(4)(A)--an action against a peace officer upon a liability incurred by acting in his official capacity--or the two-year period of 5 V.I.C. Sec. 31(5)(A)--for intentional torts--would apply to Deary's claims.[16]
 
 
 43
 We observe that under this Court's rule in Polite, the federal court's focus must be on what the district court would do had a claim seeking similar relief been brought under state law. Thus, this Court has required that in 1983 actions the underlying cause of action must be analyzed in order to apply whichever state (here, territorial) statute of limitations is most appropriate and relevant. Under state law, and, indeed, in the Virgin Islands, claims such as Deary has asserted here would be classified as tort actions. While we are aware that several other courts of appeals,[17] as well as the District Court of the Virgin Islands in Webster, have applied statutes of limitations akin to section 31(3)(B)[18]--"liability created by statute"--to section 1983 actions, in the Third Circuit we are committed to the doctrine expressed in Polite, and the cases which follow Polite adhering to Polite's reasoning.[19] Thus, being bound by previous decisions of this Court to the effect that the statute of limitations that must be applied in a 1983 action is the state or territorial statute relevant to the claim asserted, the courts of this Circuit are precluded from consideration of, or from following, any contrary or different doctrine expressed by other Courts of Appeals.[20]
 
 B.
 
 44
 The relevance of Polite's holding to the circumstances presented in this case, depending upon what the record ultimately discloses in the way of notice to the defendants, may well affect the decision of the district court in its choice and application of the statute of limitations. The original complaint filed August 4, 1980, named three unknown police officers as defendants, along with the Government of the Virgin Islands and FBI Agent Patton. Fourteen months later an amended complaint was filed which named the five police officers individually. (See chronology of events in note 3 supra.).
 
 
 45
 This Court held in Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174-75 (3d Cir.1977), that the replacement of a "John Doe" caption with a party's real name amounts to changing a party under Fed.R.Civ.P. 15(c), see supra note 19, and such an amendment will relate back only if all of the conditions of that Rule have been satisfied, including the requirement that the newly-named defendant had notice or could be expected to have had notice of the action "within the period provided by law for commencing the action against him." Only if the amended complaint was timely, therefore,--i.e., deemed to relate back to August 4, 1980--can Deary be said to come within the statute of limitations. As we have observed, see supra note 19, the facts pertaining to notice have yet to be disclosed in the record or decided by the district court. Thus, any reliance at this time by the defendants on a statute of limitations defense would necessarily be premature, as the predicate facts have yet to be established.
 
 
 46
 We therefore must reject any claim by Campbell that the statute of limitations bars Deary's action against him. Campbell's statute of limitations argument proceeds on the basis that his activities and functions as a police officer on the day of the arrest were not called into question in the first complaint and therefore he could have had no notice that he was a targeted defendant. If he had no such notice, then he argues, Deary's claim as against him could not and would not relate back to the date of the original complaint within the terms of Rule 15. While his argument is persuasive, we are not content to rest our decision on a ground which is essentially factual without the benefit of a more fully developed record or upon district court fact-finding. On remand, however, if Deary fails to establish that the individual defendants received such notice of the institution of the action [the original complaint] that they will not be prejudiced in maintaining their defense on the merits, see Varlack, supra, 550 F.2d at 174,[21] and also fails to establish the other elements required by the Rule, Campbell and the other defendants may, if they desire, renew their applications for summary judgment before the district court.
 
 VI.
 
 47
 We will affirm so much of the district court's judgment of June 6, 1983, which granted summary judgment to defendants Patton and the Government of the Virgin Islands, and which dismissed Deary's amended complaint for failure to state a cause of action against the United States.[22] We will reverse so much of the district court's judgment of June 6, 1983, which granted summary judgment in favor of defendants Evans, Tuckett, Turnbull, Campbell, and Hodge, and remand that portion of this case to the district court for further proceedings consistent with our opinion.
 
 
 48
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring and dissenting.
 
 
 49
 The court holds that plaintiff's section 1983 claims, analogous to false arrest and false imprisonment, against the Government of the Virgin Islands are barred for failure to comply with the notice requirements of the Virgin Islands Tort Claims Act (VITCA). Because I believe that it is impossible to determine on the basis of this record when plaintiff's claims accrued, I dissent from that portion of the court's opinion. In all other respects, I concur in the opinion of the court.
 
 
 50
 VITCA requires that one seeking to bring a claim against the Government of the Virgin Islands file notice within ninety days of the time the claim accrues. V.I.Code Ann. tit. 33, Sec. 3409(c)(Supp.1983). Plaintiff filed notice of her section 1983 claims on December 28, 1978. Thus, if plaintiff's claims accrued between September 29, 1978 and December 28, 1978, her notice was timely. The court, however, concludes that these claims accrued on August 4, 1978--the date plaintiff was arrested, detained, and released--and therefore are barred by VITCA's ninety-day notice requirement.
 
 
 51
 The court acknowledges that "[f]ederal law determines the date of accrual of a section 1983 cause of action." Majority Opinion at n. 16. See also Special Project, Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations, 65 Cornell L.Rev. 1011, 1092-94 (1980). The court also notes that the rule in this circuit is that a section 1983 claim accrues when the plaintiff "knew or had reason to know of the injury that constitutes the basis of this action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.1982) (per curiam). I believe, however, that the court disregards these settled principles when it concludes, without analysis, that plaintiff's claims accrued on August 4, 1978. Majority Opinion at n. 9 and n. 16.
 
 
 52
 In most cases, where detention of an innocent person is the gravamen of the complaint, as in the common law torts of false arrest and false imprisonment, it makes sense to say that when an innocent person is arrested, that person should be aware of the injury that constitutes the basis of these actions. See, e.g., Collins v. County of Los Angeles, 241 Cal.App.2d 451, 50 Cal.Rptr. 586, 589-90 (Dist.Ct.App.1966). We have before us, however, a claim, brought under section 1983, that plaintiff was denied rights secured under the fourth and fourteenth amendments. Though analogous to false arrest and false imprisonment, these claims are nonetheless quite distinct, and plaintiff's awareness of her innocence is irrelevant. See Baker v. McCollan, 443 U.S. 137, 142-46, 99 S.Ct. 2689, 2693-96, 61 L.Ed.2d 433 (1979). The gravamen of plaintiff's section 1983 claims is deprivation of liberty without probable cause. Thus, her claims accrued when she knew or had reason to know that she was arrested without probable cause.
 
 
 53
 This approach is consistent with our decision in Sandutch. Sandutch brought a section 1983 action alleging that public officials conspired to use false testimony against Sandutch at his trial for arson and murder. We held that his section 1983 claim accrued, not when he learned of the damaging testimony, but rather when he learned that a key witness, James Mastrota, had recanted his testimony and claimed it was given under duress. "Although at that time Sandutch may not have known all the facts necessary to establish that the defendants conspired to deprive him of his rights, his ... knowledge of the alleged falsity of Mastrota's statement obtained under duress should have led, by the exercise of due diligence, to the awareness that he had a cause of action." 684 F.2d at 254.
 
 
 54
 Because the record here does not show when plaintiff knew facts that should have led, by the exercise of due diligence, to the awareness that she was arrested without probable cause, I would reinstate plaintiff's section 1983 claims against the Government of the Virgin Islands and remand for determination of when these claims accrued.
 
 
 
 [1]
 The district court judge noted that there were a number of disputes as to the facts, including whether Deary was actually arrested, the nature and scope of the involvement of the higher-ranking officials who questioned Deary, and under whose auspices the FBI agent was working. The judge found that those factual disputes were not material to the issue presented on the summary judgment motions--i.e., whether qualified immunity protected the defendants--and he proceeded to grant summary judgment. We agree that these particular factual disputes should not preclude judgment from being entered in favor of Patton, the United States, and the Government of the Virgin Islands on the grounds expressed in this opinion, infra. However, we conclude that the critical probable cause determination is a jury question that precludes the grant of summary judgment as to the five Virgin Islands police officers
 
 
 [2]
 The United States was named as a defendant only in the action brought under the Federal Tort Claims Act, 28 U.S.C. Secs. 1346, 2671-2680 (1976). Deary alleged that FBI Agent Patton, an agent of the United States Department of Justice, orchestrated the events giving rise to her civil rights suit, and that therefore the Government was liable for damages under the FTCA. Liability arises against the United States only if the conduct of its employee violated state or federal law. As discussed infra, we conclude that Agent Patton's conduct violated no law. It therefore follows that the Government has no liability and the dismissal of Deary's claim against the Government will be affirmed
 Unless otherwise noted, the discussion in text will pertain only to the section 1983 suit, which includes the common law claims, filed by Deary.
 
 
 [3]
 For ease in reference we list the dates and events as they are relevant to the statute of limitations defense:
 August 1, 1978 Bank robbery
August 4, 1978 Deary arrested, released
 on bail
October 12, 1978 Charges dropped
December 28, 1978 VITCA Notice of Claim
 filed
August 4, 1980 Complaint filed
October 7, 1981 Amended complaint filed
 As we discuss infra, Sergeant Campbell's brief on appeal raises a statute of limitations question on this appeal, and the other police officer defendants at oral argument contended that the statute of limitations barred Deary's claims.
 
 
 [4]
 The district court order entered on June 6, 1983 granted motions for summary judgment for all the defendants except the United States. As to the United States, the court granted that defendant's motion to dismiss. The last paragraph of the June 6th order, however, also stated that "the amended complaint filed in Civ. Nos. 1980-289 [Deary v. Evans, et al. & the Virgin Islands] and 1981-26 [Deary v. United States] are dismissed as to all defendants." Thus, the district court did not distinguish in its disposition of the motions before it, between those motions made to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and the motions made for summary judgment under Fed.R.Civ.P. 56. Although in text infra we conclude that the amended complaint against the United States was properly dismissed, as was the common law count of malicious prosecution, we find that summary judgment was improperly granted in favor of the individual Virgin Islands defendants as to all of Deary's claims
 The district court judge never addressed the statute of limitations defense asserted by the defendants, presumably because the motions for summary judgment which they filed did not seek judgment on that ground.
 
 
 [5]
 The arresting police officer in Patzig was never served, and therefore could not be held liable for the alleged false arrest. The case was remanded so that the district court "may exercise its discretion to entertain the pendent state law claims against the City." Patzig v. O'Neil, 577 F.2d 841, 851 & n. 12 (3d Cir.1978)
 
 
 [6]
 Testimony of the bank teller and the bank surveillance photograph revealed that the actual robber was a young Black woman, approximately 105-115 pounds, between 5'2" and 5'7" in height, of light-brown complexion, and wearing an afro hairstyle. Deary, who was a twenty-year old Black woman at the time of her arrest, stands 5'5", weighed approximately 110 pounds, and wore her black hair in an afro hairstyle
 
 
 [7]
 See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir.1981), for a discussion of the distinction between basic, inferred, and ultimate facts. But see Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), holding that discriminatory intent, while an ultimate fact, is nevertheless to be tested in a non-jury context by the clearly erroneous standard prescribed in Fed.R.Civ.P. 52(a)
 
 
 [8]
 As we have discussed earlier, Deary's complaint charged the common law torts of false arrest, false imprisonment, malicious prosecution, abuse of process, and infliction of emotional distress. Whether or not any of these claims would be responsive to motions to dismiss for failure to state a claim, a common element of all the common law torts brought by Deary is the predicate that probable cause for the actions taken by the defendants be lacking. Thus, if the jury is satisfied that the police officers properly discharged their function by arresting and detaining Deary as they did, the common law causes of action would fall, as would the 1983 action
 
 
 [9]
 The dissent seeks to distinguish the accrual date for a false arrest from the accrual date for an arrest without probable cause (under the Fourth and Fourteenth Amendments). Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.1982) (per curiam), precedents, and reason fail to support such a distinction
 Sandutch, while not a false arrest case, nevertheless announces the standard for the manner in which a determination is to be made with respect to the accrual of a cause of action for personal injury. Applying that standard which is recited in text above to an arrest made without probable cause, results in an accrual date identical with the date of arrest. Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980).
 Sandutch itself involved a charged conspiracy to violate Sandutch's constitutional rights by public officials who allegedly obtained a fraudulent statement of an alleged co-conspirator (Mastrota). Sandutch was arrested and convicted in 1976 and the fraudulent statement from Mastrota was obtained in that year. This court assumed, without deciding, that Sandutch did not know he had a cause of action until 1980, long beyond the period of time when he could maintain his Sec. 1983 action which had accrued in 1976. We held that Sandutch had reason to know of the alleged conspiracy to secure false testimony as early as 1976 when he knew of the recantation of his co-conspirator. We so held even though Sandutch may not have known all the facts necessary to establish that the defendants conspired to deprive him of his rights. We so reasoned because his 1976 knowledge of the recantation should have led Sandutch to the awareness that he had a cause of action.
 Applying that holding and standard to the present circumstances, the pertinent inquiry becomes: when did Deary know or have reason to know of the injury, i.e., the arrest that constituted the basis of her action? It is obvious that when Deary was arrested, knowing that she had no complicity in the robbery, her cause of action accrued: nothing further had to occur. Even if the mere fact of arrest did not provide all the facts necessary to prove her alleged cause of action, Deary unquestionably knew that she had been arrested and that so far as she knew she was arrested without probable cause. That in itself is sufficient to start her cause of action running. Baker v. McCollan, 443 U.S. 137, 142-146, 99 S.Ct. 2689, 2693-2696, 61 L.Ed.2d 433 (1979), cited in dissent, is not to the contrary. Indeed, Baker is inapposite; it is not concerned with the statute of limitations issue we address here.
 Thus, contrary to the dissent's thesis, there is no basis for any suggestion that a false arrest charge, i.e., an arrest without probable cause, accrues at some later date than the date on which the false arrest itself occurred. Cases in other jurisdictions are virtually uniform in so holding. See note 16 infra.
 
 
 [10]
 We assume without deciding that a cause of action for malicious prosecution will lie against public officials of the Government of the Virgin Islands or the Government itself. Compare Res. (2d) Torts Sec. 653 & comment e with Jennings rights of constitutional magnitude for section 1983 purposes. But see Bretz v. Kelman, 722 F.2d 503, 505 (9th Cir.1983) ("In this circuit, facts alleging the common law tort malicious prosecution alone are insufficient to state a deprivation of constitutional rights.")
 
 
 [11]
 A cause of action for malicious prosecution will lie only against one who initiates the institution of criminal proceedings "without probable cause and primarily for a purpose other than that of bringing an offender to justice." Res. (2d) of Torts Sec. 653 (rule of decision in the Virgin Islands under 1 V.I.C. Sec. 4). All three of these elements--as well as the requirement that the proceedings were terminated favorably to the accused--must be established in order to succeed on a claim of malicious prosecution
 
 
 [12]
 Indeed, Deary's own deposition discounts the notion of malice. See Deposition of C. Deary, Campbell Supp.App. A-124
 Q: Do you think he [Campbell] had something personally against you?
 A: I don't see why he could have. As far as I know, he didn't know me.
 Q: So, then, why do you feel that [Campbell] was doing something maliciously towards you?
 A: I don't think he was doing anything.
 
 
 [13]
 Our reading of the depositional testimony reveals that the depositions were not directed to any malicious prosecution claim. Rather, the thrust of the depositional questioning had to do with the issue of probable cause
 
 
 [14]
 As noted previously in footnote 2, the United States is liable only to the extent that its agent is liable. Since Patton is not liable under any of the theories advanced by Deary, the dismissal of the claim against the United States under the FTCA was proper and will be affirmed
 
 
 [15]
 In pertinent part, Fed.R.Civ.P. 15 provides:
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. [Emphasis added].
 
 
 [16]
 Federal law determines the date of accrual of a section 1983 cause of action. See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980). This Court, as we have earlier observed in text, has held that a claimant's civil rights cause of action accrues when the claimant "knew or had reason to know of the injury that constitutes the basis of this action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.1982) (per curiam); see Keating v. Carey, 706 F.2d 377, 382 (2d Cir.1983). Deary's claim for false arrest accrued on the date of her arrest, August 4, 1978, see Sandutch, supra, 684 F.2d at 254; Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980); Brewster v. Woodward & Lothrop, 530 F.2d 1016, 1017 (D.C.Cir.1976); Hitchmon v. United States, 585 F.Supp. 256, 259 (S.D.Fla.1984); Shulman v. Miskell, 626 F.2d 173, 176 (D.C.Cir.1980); Rinehart v. Locke, 454 F.2d 313, 315 (7th Cir.1971). Her claim of false imprisonment must have accrued on this same date, as she was released on bail that day
 Deary also alleges abuse of process and infliction of emotional distress as possible bases of tort liability. A cause of action for abuse of process or infliction of emotional distress would necessarily accrue on the same date as a cause of action for false arrest, since on that date Deary would have reason to know of the injury which those two torts encompass.
 Her claim of malicious prosecution, on the other hand, assuming her allegations even stated a claim--a proposition on which we have cast considerable doubt (see text supra on the liability of the Government of the Virgin Islands)--would have accrued on October 12, 1978, the date that the criminal proceedings were resolved in Deary's favor.
 
 
 [17]
 See Garcia v. Wilson, 731 F.2d 640, 642-51 (10th Cir.1984) (summarizing position taken by each Court of Appeals on this issue)
 
 
 [18]
 Section 31(3)(B) provides for a six-year period for "[a]n action upon a liability created by statute, other than penalty or forfeiture."
 
 
 [19]
 See, e.g., Aitchison v. Raffiani, 708 F.2d 96, 101 (3d Cir.1983); Knoll v. Springfield Twp. School Dist., 699 F.2d 137, 140-41 (3d Cir.1983), cert. granted, --- U.S. ----, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); Tokarcik v. Forest Hills School Dist., 665 F.2d 443, 448 (3d Cir.1981); Davis v. United States Steel Supply, 581 F.2d 335, 337 (3d Cir.1978); Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir.1977); Meyers v. Pennypack Woods Home Ownership Assn., 559 F.2d 894, 900 (3d Cir.1977); Wilson v. Sharon Steel Corp., 549 F.2d 276, 280 (3d Cir.1977)
 
 
 [20]
 If the record as it may be developed were to disclose that the defendants had no notice of dreary's lawsuit prior to October 7, 1982, then it could be concluded that the amended complaint did not relate back and that Deary's claim was therefore time-barred, even under a three-year statute of limitations. Fed.R.Civ.P. 15(c). Our scrutiny of the record in this case, including depositions of each of the individual defendants, reveals that the officers did not allege that they had no notice of Deary's lawsuit prior to October 7, 1981, presumably because they were not focusing on a statute of limitations ground for summary judgment purposes
 Because the issue of whether a particular defendant had or did not have notice of the original complaint is a factual question to be resolved in the district court in the first instance--either by way of summary judgment if there is no genuine dispute of fact, or by the jury if there is--we are precluded at this time from further consideration of the statute of limitations defense as a basis for deciding this appeal of the five individual defendants in this case.
 
 
 [21]
 Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir.1977), held, inter alia, that the plaintiff seeking to amend the original complaint bears the burden of satisfying all of the conditions of Rule 15. See generally 3 Moore's Federal Practice p 15.15[4.-1] at 15-221 (2d ed. 1984)
 
 
 [22]
 The Government of the Virgin Islands took a protective cross-appeal (at No. 83-3409) from a prior district court decision in this case. In light of our disposition of this case, we will dismiss the cross-appeal as moot