**Milton ROWE**

v.

**Ralph ROMANO and Ramon Rivera.**

**Civil Action No. 96–1150.**

United States District Court,
E.D. Pennsylvania.

Sept. 23, 1996.

Stephen D. Rhoades, Orloski & Hinga, Allentown, PA, for Plaintiff.

Donald E. Wieand, Jr., Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff Milton Rowe ("Rowe") instituted this 42 U.S.C. § 1983 action to recover damages for his alleged false arrest and imprisonment by Defendants Ralph Romano and Ramon Rivera, members of the Allentown Police Department. Defendants now seek summary judgment on Rowe's claims. Because Rowe agrees that Officer Romano was not involved in either his arrest or his detention, we grant summary judgment as to him and address the merits of the instant Motion only with respect to Defendant Rivera. For the reasons that follow, the Motion is granted.

## BACKGROUND

This action concerns Plaintiff Rowe's arrest and subsequent detention for the February 14, 1994 robbery of Hondo's Bar ("Hondo's") in Allentown, Pennsylvania. At approximately 3:30 p.m. on this date, an African–American male jumped over the counter at Hondo's, yelled "this is a robbery," and indicated that he had a gun under his overcoat. The man then grabbed two money bags resting either in or near the cash register and ran out the door. At the urging of the barmaid Donna Shull ("Shull"), two patrons, Hiram Nieves ("Nieves") and Juanita Toney ("Toney"), raced after the fleeing robber. Nieves eventually chased the robber

down and, after a struggle, wrested the money bags from him. The robber fled the scene.

Allentown Police Officer Ramon Rivera ("Rivera") responded to the dispatcher's report of the armed robbery at Hondo's. Rivera questioned Shull briefly and spoke with other witnesses at the scene, and then Shull, Toney, and Nieves went to the Allentown Police Department to give statements.[1] Detective Glenn Granitz ("Granitz") discussed the incident with Shull at the station and witnessed her select photo #27546 in the photo identification books as that of the robber. Though Shull indicated that she knew this man as a regular bar patron named "Sam Hicks," police records reveal him to be the Plaintiff. Despite this discrepancy, Shull later told Rivera that she was, in Rivera's words, "one hundred percent positive" that the man in the photo was the robber. Granitz communicated Shull's identification to Detective Alan Sotak ("Sotak"), who passed the information along to Rivera. Although Sotak also told Rivera that both Nieves and Toney identified Rowe's photo,[2] the probable cause statement Rivera made in securing the warrant for his arrest notes only Shull's identification and makes no mention of Nieves' and Toney's statements. Still, the warrant was issued and on February 15, 1994, Rivera proceeded to Rowe's home and arrested him.[3] Rowe made no statement to Rivera at this time and the two had no further contact concerning the robbery.

Factual disputes begin to emerge at this point. Rowe's preliminary hearing was postponed a number of times and still had not

taken place by March 22, 1994, when the police released him from the Lehigh County Prison (LCP) on his own recognizance. Rivera attributes the delays to several factors, among them the alleged unavailability of the witnesses.[4] Nieves moved shortly after the incident to another part of Allentown and may have been unreachable, for a time at least. But Toney, who did not move, testified at her deposition that the police never contacted her. Shull was available, according to Rivera, but on July 14, 1994, when the hearing was finally to take place, Shull informed Rivera that she believed Plaintiff was not the robber, and that, since the money had been recovered, she had no further interest in testifying. Rivera states that this was the first time Shull told him that she was recanting her identification, that he promptly notified the district attorney's office, and that the charges were dropped that day.

Plaintiff's story, however, is that Shull actually informed the police that they had the wrong man much earlier. Plaintiff submits an affidavit in which Shull states that "within a day or two after February 14, 1994, [she] told the Allentown Police that they had arrested the wrong person for the robbery of Hondo's Bar." Pl.'s Resp. to Defs.' Mot. for Sum.Judg. at Ex. 2 ¶ 5. Further, Rowe testified at his deposition that the day (or day after) he was released from LCP, he went back to Hondo's to confront his accusers, and that Shull told him then (either March 22 or 23) that she had already informed the police that they had arrested the wrong man. Finally, Plaintiff submits the "Investigative

1. Also taken to police headquarters were several people who had witnessed Nieves fight with the robber. These individuals were giving Nieves a ride back to Hondo's after the struggle when the police briefly detained them as potential suspects in the robbery. Though these parties apparently also could positively identify the Plaintiff as the robber, Defendants do not argue that their statements contributed to the probable cause determination.

2. Toney also apparently identified Rowe's photo as that of Sam Hicks, based on what Shull told her at the bar after the robbery but before the police arrived. See Toney's Dep. at 17.

3. Rivera testified at his deposition that he saw in Plaintiff's apartment a black and white, three-quarter length, tweed coat that matched Shull's

description of the coat worn by the robber. Plaintiff was wearing a different coat when Rivera arrested him, however, and Rivera apparently did not take the overcoat into custody.

4. Other factors caused the multiple reschedulings of Rowe's hearing, such as the unavailability of Rowe's attorney and, on one occasion, Rowe's sentencing for an unrelated assault conviction. Rowe served a six month prison sentence from April to October 1994 for this conviction. A subsequent parole violation caused Rowe to be assigned to a substance abuse treatment center called Keenan House, his residence as of the time of his deposition.

Supplement" made on July 14, 1994 by Officer Rivera in which he notes that

> [Shull] refuses to testify because she states we had the wrong man. Ms. Shull pick [sic] out the suspect from a photo line up. But change her mind the next day. The DA office was inform [sic] of the situation.

Pl.'s Resp. to Defs.' Mot. for Sum.Judg. at Ex. 3. Plaintiff submits no evidence suggesting that Shull specifically notified Rivera any time prior to July 14, 1994.

Plaintiff argues that this evidence presents jury triable issues bearing on whether Officer Rivera arrested and detained him in violation of his constitutional rights.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has filed a properly supported summary judgment motion, the party opposing the motion must demonstrate a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510).

### DISCUSSION

Rowe alleges that Rivera arrested and detained him for the robbery at Hondo's Bar without probable cause, thus violating his constitutional right to be free from unreasonable seizures. Rowe's contentions really amount to two separate claims, namely, (1) that Rivera lacked probable cause to make the initial arrest, and (2) that Rowe's detention after Shull retracted her identification was unlawful. We address each claim in turn.

### I. THE ARREST

Rivera argues that the identifications of Shull, Nieves, and Toney so clearly provided him with the requisite probable cause to arrest Rowe that a reasonable jury could not find otherwise, or, alternatively, that he is entitled to qualified immunity for the arrest. Rowe responds that this probable cause determination is by its very nature a jury question. We agree with Rivera, however, that the issue of qualified immunity should be resolved by the court at this point, and that summary judgment on the false arrest claim is warranted.

The Third Circuit has very clearly articulated the principles of law that govern Rowe's § 1983 false arrest claim. *See Orsatti v. New Jersey State Police,* 71 F.3d 480, 482–84 (3d Cir.1995). The Fourth Amendment requires that police officers have probable cause to make an arrest, meaning that the "facts and circumstances within the officer's knowledge ... [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *see also Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Although officers who arrest individuals without probable cause may face civil liability, *Orsatti,* 71 F.3d at 483 (citing *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)), the doctrine of qualified immunity shields them from suit in some cases.

*Orsatti,* 71 F.3d at 483. Specifically, qualified immunity shields Rivera from Rowe's false arrest claim if "a reasonable officer could have believed [Rowe's arrest] to be lawful, in light of clearly established law and the information the [arresting officer] possessed." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)). As the Third Circuit has explained,

> the standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions.

*Orsatti,* 71 F.3d at 483 (citing *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)). In other words, "the qualified immunity doctrine 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Orsatti,* 71 F.3d at 484 (citing *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098); *see also Hunter,* 502 U.S. at 224, 112 S.Ct. at 535 ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (citing *Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039–40).

■ Although the existence of probable cause is generally an issue of fact for the jury, *Groman v. Township of Manalapan,* 47 F.3d 628, 635; *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 191 (3d Cir. 1984), we must resolve immunity questions at the earliest possible stage of litigation. *Creighton,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Orsatti,* 71 F.3d at 483. Therefore, when the material facts are not disputed, we may decide whether the officer is shielded by qualified immunity as a matter of law. *Id.; Cf. Karnes v. Skrutski,* 62 F.3d 485, 491 (3d Cir.1995).

Summary judgment is indeed appropriate as to Rowe's false arrest claim because the evidence that informed Rivera's determination of probable cause to arrest is undisputed.[5] Three eye-witnesses with extremely good views of the suspect identified Rowe's picture as that of the robber. *Cf. Deary,* 746 F.2d at 191 (reversing summary judgment for police where circumstantial evidence formed basis of probable cause determination). Shull and Toney were especially credible because they recognized Rowe from having seen him in the bar on previous occasions, and Nieves got a very close look at the robber when he chased him down the street, tackled him, and recovered the money.

Rowe argues that several factual issues are sufficiently material to let a jury decide whether Rivera could reasonably believe that he had probable cause to arrest him. First, Rivera did not himself witness Shull, Nieves, or Toney identify Rowe's photo as that of the robber. Second, Rivera's probable cause statement notes only Shull's identification, and does not reflect the statements of Nieves and Toney. Lastly, Shull identified Rowe's picture as that of a man she knew as "Sam Hicks," yet only a cursory investigation was made into the potential identity and whereabouts of the putative Mr. Hicks.

■ We find these contentions unpersuasive. First, Rowe submits no evidence that calls into question the affidavits and deposition testimony that indicate that Shull, Nieves, and Toney all identified Rowe's picture in the photo identification books. Indeed, Rowe's argument that Shull later retracted her identification is an implicit concession that she initially identified him as the robber. Second, Rivera is only required to include enough information in his warrant application to establish probable cause for arrest. *See Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). He need not include everything that went into the probable

---

5. The evidence Rowe submits in opposition to Defendants' Motion demonstrates factual disputes as to what occurred after he was arrested. Rowe presents no evidence creating factual issues concerning, for example, whether the witnesses' statements were fabricated or whether Rivera could have otherwise believed them to be unreliable.

cause determination, and evidence not included in this statement is no less credible as a result. Lastly, Shull's indication that she knew the man in photo # 27546 as "Sam Hicks" does not detract from her identification because, when informed that the photo was actually that of Milton Rowe, she insisted that he was the robber.

We therefore find that, based on the undisputed evidence that three eye-witnesses positively identified Rowe's picture as that of the man who robbed Hondo's bar, Officer Rivera is entitled to qualified immunity as a matter of law. Indeed, not only did Rivera have probable cause to arrest Rowe, we believe that a jury could conclude this evidence sufficient to convict Rowe of guilt beyond a reasonable doubt. We turn then to Rowe's contention that his subsequent detention violated his constitutional rights.

## II. THE DETENTION

Rivera argues that Rowe must first establish that he was arrested without probable cause to recover for the allegedly improper detention following that arrest. Finding no genuine issue of material fact as to Rowe's arrest claim requires us, Rivera contends, to grant summary judgment on Rowe's illegal detention claim. Rowe responds that, regardless of whether he was arrested with probable cause, "an unlawfully prolonged detention can, in itself, form the basis for a § 1983 action." Pl.'s Mem. in Opp. to Defs.' Mot. at 4. Rowe argues, in short, that Rivera violated his Fourth Amendment rights by continuing to detain him until March 22 after Shull informed the police that they had arrested the wrong man. While we acknowledge some uncertainty in the law, we need not resolve it to grant summary judgment for Rivera on qualified immunity grounds.

As our Court has recently noted in a similar factual context, it is unclear whether a § 1983 claim exists in this Circuit for an improper detention following a valid arrest. See *Piergrossi v. Karcewski,* 1995 WL

318797, *7 (E.D.Pa.1995), *aff'd.,* 79 F.3d 1138 (3d Cir.1996). Rivera relies heavily on the Third Circuit's recent statement that, under *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979), an "arrest based on probable cause could not become the source of a claim for false imprisonment." *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995). This holding may not be as sweeping as it appears at first blush, however, because *Groman* did not concern the problem we are faced with here, namely, where allegedly exculpatory information comes to light after a proper arrest. Further, other Courts of Appeals have noted the Court's language in *Baker* as allowing an improper detention claim even where the initial arrest is valid.[6] *See Cannon v. Macon County,* 1 F.3d 1558, 1562 (11th Cir.1993) ("Under certain circumstances, however, detention on the basis of misidentification may present a viable § 1983 claim."); *Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992); *Sanders v. English,* 950 F.2d 1152, 1160–62 (5th Cir.1992). In *Sanders,* the Fifth Circuit held that a § 1983 claim existed for unlawful detention where the evidence established that the "defendant knowingly and willfully ignored substantial exculpatory evidence." 950 F.2d at 1162; *see also Gay v. Wall,* 761 F.2d 175, 178–79 (4th Cir. 1985) (holding that plaintiff's allegation that defendant police officers had actual knowledge of his innocence but detained him until they could "find the right man" stated a constitutional violation); *Piergrossi* 1995 WL 318797 at *7–8.

Even assuming that the Third Circuit would follow the approach of other circuits in applying *Baker* to this factual context, we find that Rowe has failed to demonstrate a genuine issue of material fact in light of the doctrine of qualified immunity. Viewing all of the facts and drawing all reasonable inferences in Rowe's favor, the police continued to detain Rowe after his arrest based on the positive identifications of two eye-witnesses (Nieves and Toney), as well as an initial

---

**6.** The Court stated in *Baker* that "it may assume, *arguendo,* that depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprived the accused of 'liberty ... without due process of law.'" 443 U.S. at 144–45, 99 S.Ct. at 2694–95.

identification made by a third witness (Shull) but retracted the next day. Evidence that Shull informed the police the day after the arrest that Rowe was not the robber would not allow a reasonable jury to find that Rivera "knowingly and willfully ignored substantial exculpatory evidence" where Rowe's detention was also based on significant additional information.[7]

The cases Rowe cites to the contrary are clearly distinguishable. In *Sanders,* the defendant officer failed to disclose "three alibi witnesses [he deemed credible], a negative identification by one of the witnesses who helped compose the police sketch, and a belated identification by the victim under peculiar circumstances." 950 F.2d at 1162. In *Cannon,* the police continued to detain the plaintiff in the face of repeated protests of innocence and where the plaintiff's driver's license, social security card, and physical description did not match the National Crime Information Center report that formed the basis of her arrest. 1 F.3d at 1560–61. In both of these cases, the defendants themselves (as opposed to "the police" generally) had far less evidence of guilt and far more evidence of innocence than did Rivera in this case.

We therefore find that, as a matter of law, a reasonably well-trained officer could reasonably believe that probable cause existed to detain Rowe in these circumstances. Even after one of three eye-witnesses informed the police that the wrong man was in custody, the statements and positive identifications of Nieves and Toney are a sufficient basis on which an officer could reasonably find the probable cause necessary to detain Rowe. Thus, the doctrine of qualified immunity shields Rivera from liability on Rowe's false imprisonment claim.

## CONCLUSION

Defendants' Motion for Summary Judgment is therefore granted. An appropriate Order follows.

---

**7.** Further, Rowe submits no evidence that suggests that *Rivera* ever knew that Shull withdrew her initial identification before the July 14, 1994 hearing. Shull's affidavit and Rowe's deposition testimony merely establish that Shull informed "the police" that they had arrested the wrong man. Plaintiff simply provides no support for its

## ORDER

AND NOW, this 23rd day of September, 1996, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's response, and Defendants' Reply thereto, it is hereby ORDERED that Defendants' Motion is GRANTED.

allegation that Rivera bears personal responsibility for detaining Rowe in the face of exculpatory evidence. We do question the diligence of Rivera's efforts to contact Nieves and Toney to have them testify at the preliminary hearings, but find that this has no bearing on whether Rowe was detained without probable cause.