**Joseph ROSE**

v.

**Paul BARTLE, et al.**

**Civ. A. No. 86–6255.**

United States District Court,
E.D. Pennsylvania.

July 22, 1988.

D. Kairys, Kairys & Rudovsky, Philadelphia, Pa., for plaintiff.

Thomas A. Brophy, Thomas K. Ellixson, Norristown, Pa., John F. Smith, III, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., M.M. Killinger, Dist. Atty. Office, John G. Kaufman, Kaufman & Hughes, Norristown, Pa., Daniel J. Ryan, Douglas J. Kent, Labrum and Doak, David H. Marion, R.E. Welsh, Jr., Montgomery, McCracken, Walker & Rhoads, Gregory T. Magarity, Wolf, Block, Schorr & Solis–Cohen, J. Vincent Roche, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

Plaintiff claims that criminal charges relating to "macing" instituted against him by the District Attorney of Montgomery County in November, 1983, following a recommendation of an investigating grand jury, violated his federally protected constitutional rights, state common law rights and statutory rights cognizable under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq.* (RICO). Joseph Rose, formerly Chief Deputy Sheriff of the Montgomery County Sheriff's Department, has sued the former District Attorney, Joseph A. Smyth, Jr., allegedly for causing false criminal charges to be lodged against him and attempting to cause him to give false testimony before the grand jury; Bert Goodman, the Assistant District Attorney who assisted Smyth in the grand jury investigation; Oscar Vance, Chief County Detective, who also assisted Smyth in the grand jury investigation and who actually signed the document which preferred criminal charges against Rose; Paul Bartle, Chairman of the County Commission; and Robert Asher, Chairman of the Montgomery County Republican Party. Bartle and Asher are alleged to have masterminded the instigation of criminal charges against plaintiff, his boss, for-

mer Sheriff Frederick Hill, and several other top officials in the Sheriff's department, for the purpose of forcing Hill to resign his office or to fail in his attempt for reelection. Montgomery County and the County Republican Party are also sued because allegedly Montgomery County is controlled by the County Republican Party and, allegedly, Asher and Bartle control the County Republican Party.

Plaintiff alleges that the criminal charges against him resulted from a corrupt County Republican Party conspiracy and scheme to oust Hill from the Sheriff's Department and to assert control thereof by placing persons whom they controlled in high influential ranks within the department.

Jurisdiction is asserted under 42 U.S.C. § 1983 and 18 U.S.C. § 1964(c). Plaintiff claims that he was the victim of false arrest, abuse of process and malicious prosecution and his federal constitutional rights were violated thereby.

Plaintiff filed his complaint on October 27, 1986. During oral argument on defendants' motions to dismiss and to stay discovery, this court gave him leave to file an amended complaint in an attempt to bolster the pleadings, which were under challenge by defendants as insufficient. The amended complaint was filed on September 21, 1987. Defendants' motions to dismiss were renewed. Defendant Smyth answered the amended complaint attaching a copy of the 1982 Montgomery County Investigating Grand Jury's Presentment to the Honorable Louis D. Stefan, Supervising Judge, Montgomery County Court of Common Pleas. Smyth also attached a copy of Judge Stefan's Findings and Order. As a result of these attachments, this court notified the parties on January 26, 1988 that the motions to dismiss would be considered as motions for summary judgment and ordered that submissions by both sides be completed by February 26, 1988.[1]

---

1. There are three cases deemed related to this action and assigned to me for trial or other disposition—*Hill v. Bartle, et al.*, Civil Action No. 86–6963, 87–3927; *Kolimaga v. Bartle, et al.*, Civil Action No. 87–0804; *Reed v. Bartle, et al.*,

Civil Action No. 87–6495. Because of the similarity of the complaints, motions, and arguments in all four matters, the court has treated them as consolidated for purposes of addressing common issues. The defendants' motion to dis-

## I. *SECTION 1983*

Plaintiff alleges in Count I of his amended complaint that his civil rights were violated by defendants, acting under color of law. Plaintiff's claim against defendants Smyth and Goodman are dismissed because they are entitled to prosecutorial immunity. The claim is dismissed as to the remaining defendants because the statute of limitations has run. In addition, plaintiff has failed to show causation.

### A. *Prosecutorial Immunity*

District Attorney Smyth and Assistant District Attorney Goodman are entitled to prosecutorial immunity for the activities alleged in plaintiff's amended complaint. Specifically, Rose claims that:

1. Smyth instituted grand jury proceedings without investigation and knowing Rose to be innocent of any criminal wrongdoing. Amended Complaint, ¶¶ 39–40;

2. Smyth and Goodman influenced and directed the grand jury to present false findings. Amended Complaint, ¶ 41(a);

3. Smyth and Goodman solicited and prepared perjured testimony by witnesses. Amended Complaint, ¶ 41(a);

4. Smyth and Goodman reported what happened in the grand jury proceedings to other defendants in violation of state law. Amended Complaint, ¶ 41(b);

5. Smyth and Goodman intentionally failed to call witnesses with knowledge of the events who they believed would provide exculpatory evidence for Rose. Amended Complaint ¶ 41(c);

6. Smyth and Goodman attempted to get Rose to perjure himself in the grand jury proceedings. Amended Complaint, ¶¶ 42(a)–42(d);

7. Smyth and Goodman acted solely pursuant to the instructions of defendants Robert Asher, Chairman of the Republican Party, and Paul Bartle, Chairman of the County Commission, "under the enticement of defendants' offers to benefit [their] political [careers] and the compulsion of defendants' threats to ruin [their] political [careers]." Amended Complaint, ¶¶ 42(e), 41(g).

Smyth and Goodman move for dismissal, stating that even if the complaint's allegations are taken as true, Rose has failed to state a claim on which relief can be granted. Smyth and Goodman argue that the federal civil rights violations alleged by Rose involve the exercise of Smyth's and Goodman's discretion as part of the judicial process and that their alleged actions are thus subject to absolute immunity from a civil suit for damages.

Smyth cites the case of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), which held that prosecutors are entitled to absolute immunity for "activities ... intimately associated with the judicial phase of the criminal process." 424 U.S. at 430, 96 S.Ct. at 995. The Court in *Imbler* held that, despite a prosecutor's knowing use of perjured testimony, the prosecutor's actions in initiating the prosecution, and his actions in presenting the State's case, he was immune from a civil suit for damages under § 1983. The Court rationalized absolute immunity for prosecutors on policy grounds. It noted that "if the prosecutor could be made to answer in court each time [a criminal defendant] charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." 424 U.S. at 431, 96 S.Ct. at 995. *Imbler* left open the question of whether a prosecutor enjoys similar immunity in his role as an administrator or investigative officer. *Id.* at 430–431, 96 S.Ct. at 994–995.

Many courts have held that only a qualified, good faith immunity applies to a prosecutor acting in an investigative or administrative capacity. *See Ross v. Meagan*, 638 F.2d 646 (3d Cir.1981); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The third circuit held in *Mancini v. Lester*, 630 F.2d 990, 992 (3d Cir.1980), that "the lower federal courts must employ a functional analysis to deter-

---

miss the amended complaint in *Hill v. Bartle* did not become ripe until the Plaintiff's Memorandum of Law in Opposition to Defendants' Mo-

tion to Dismiss the Amended Complaint was filed on May 27, 1988.

mine whether *Imbler's* absolute immunity protects a prosecutor."

The court in *Mancini* followed its decision in *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir.1979), which had held that "to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded ·to the decision itself." 599 F.2d at 1215. Investigative acts which cannot be said to be a part of the judicial process are subject only to good faith immunity.

An examination of Smyth's and Goodman's alleged acts is required to determine whether they are (1) "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995, or (2) investigative steps taken in an attempt to secure information necessary to determine whether to initiate a prosecution. *Forsyth*, 599 F.2d at 1215–1216.

■ 1. Rose alleges that Smyth instituted grand jury proceedings without investigation and knowing Rose to be innocent of any criminal wrongdoing. Amended Complaint ¶¶ 39–40. The decision to institute grand jury proceedings and the institution of proceedings are elements of prosecutorial decisionmaking which the doctrine of absolute immunity is designed to protect. Intent and motive play no role in immunity analysis. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir.1986). Therefore, these allegations are not actionable against Smyth.

■ 2. Rose alleges that Smyth and Goodman influenced and directed the grand jury to present false findings. Amended Complaint ¶ 41(a). The alleged action here, the presentation of a case to a grand jury, is within the prosecutor's traditional function and subject to absolute immunity under *Imbler*. *See Maglione v. Briggs*, 748 F.2d 116 (2d Cir.1984). *See also, Siano v. Justices of Massachusetts*, 698 F.2d 52, 57 (1st Cir.1983), *cert. denied*, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 91 (1983). This allegation fails to state a viable basis for liability.

■ 3. Rose claims that Smyth and Goodman solicited and prepared perjured testimony by witnesses for use in the grand jury proceedings. Amended Complaint ¶ 41(a). Rose claims that while a prosecutor may be immune for knowing use of perjured testimony, procurement of perjured testimony by coercion is at best an investigative act and a prosecutor is thus not entitled to absolute immunity. Smyth and Goodman argue that the allegations of subornation of perjury are intimately related to judicial proceedings and that absolute immunity is required in such a situation, consistent with the holding in *Imbler*. Smyth cites *Tate v. Grose*, 412 F.Supp. 487 (E.D.Pa.1976), as support for his position. In *Tate*, then Chief Judge Joseph S. Lord, III, held as without merit a plaintiff's claim that immunity does not apply where a defendant prosecutor solicited perjured testimony. He stated:

> [T]here is no reason to depart from a rule of absolute prosecutorial immunity merely because the complaint alleges that defendants not only *used* perjured testimony against plaintiff but *solicited that perjury testimony as well*. To allow such an allegation to defeat the prosecutor's immunity would vitiate the *Imbler* holding. Anyone against whom perjured testimony was used could then force the prosecutor to court in a civil damage action simply by reframing the claim to allege that the perjured testimony was solicited.

*Tate*, 412 F.Supp. at 488 (emphasis added). *See also Morris v. Orman, et al.*, No. 87–5149, slip op. at 5 n. 5 (E.D.Pa. June 22, 1988) [available on WESTLAW, 1988 WL 68093]. I agree with Chief Judge Lord's views inasmuch as there is no policy reason for distinguishing between knowing use of perjury and subornation of perjury for the purposes of determining whether a prosecutor should be entitled to prosecutorial immunity in a § 1983 action. Thus, Smyth and Goodman are entitled to absolute immunity on the claim of solicitation of perjury.

■ 4. Rose claims that Smyth and Goodman leaked information regarding the grand jury proceedings to other defendants

in violation of state law. Rose claims that grand jury leaks cannot be characterized as intimately related to the judicial process and thus fall outside the scope of absolute immunity. Rose argues that the third circuit "squarely held [in *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir.1977)] that prosecutorial disclosures of false information [are] not part of a prosecutor's 'quasi-judicial' function." Plaintiff's Memorandum at 4.

Smyth counters that the holding of *Helstoski* is not applicable because it did not involve leaks in the course of a judicial proceeding. The information that the prosecutor disseminated to the public had not occurred before the grand jury. Indeed, *Helstoski* involved the leaking of false information. Here, there is no allegation that false information was leaked from the grand jury proceedings, but only that Smyth "regularly reported what transpired in the grand jury...." Amended Complaint, ¶ 41(b).

In order to determine whether Smyth's and Goodman's conduct falls within the scope of absolute immunity, it is necessary to look to the purposes underlying the doctrine. The main purpose of absolute immunity is to avoid "harassment by unfounded litigation [which] would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423, 96 S.Ct. at 991. Courts have held that a prosecutor is absolutely immune if his or her actions take place within the context of a judicial proceeding. For example, a prosecutor was held absolutely immune from allegations that he put a "spy" in the defense attorney's "camp." *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987). Another prosecutor was held absolutely immune from civil claims that he conspired with a judge to arrive at a guilty verdict. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir.1986) (en banc). In this way, courts have fostered the higher public interest of ensuring independent and disinterested prosecutorial de-

cisionmaking even where the genuinely wronged accused is left without civil redress against the prosecutor or is deprived of his liberty. *Imbler*, 424 U.S. at 424, 96 S.Ct. at 992.

*Helstoski v. Goldstein* involved a prosecutor who deliberately leaked false information to the press concerning Mr. Helstoski in order to damage his political prospects. This falsification necessarily occurred outside of any judicial proceeding. The court held that such behavior, if proved, "would lie outside the rationale for absolute immunity set forth in *Imbler.*" 552 F.2d at 566.

Here, the alleged leaks in the present case took place within the context of a judicial proceeding and was for the purpose of relaying information that was actually presented to the state grand jury. Therefore, the alleged act of leaking accurate information must be afforded absolute immunity because it falls within the rationale expressed in *Imbler*.

■ 5. Rose alleges that Smyth and Goodman intentionally failed to bring forward exculpatory evidence. Amended Complaint, ¶ 41(c). The alleged failure to bring forward exculpatory evidence falls into the same category as the alleged use of and subornation of perjury. They are acts and omissions in the presentation of a case to a grand jury. The presentation of a case to a grand jury is within the prosecutor's traditional function and the prosecutor is entitled to absolute immunity. *See Maglione v. Briggs*, 748 F.2d 116 (2d Cir. 1984); *Jones v. Shankland*, 800 F.2d 77 (6th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 2177, 95 L.Ed.2d 834.

6. Rose claims that Smyth and Goodman attempted to cause him to perjure himself in the grand jury proceedings. Amended Complaint, ¶¶ 42(a)–42(d). As discussed in number 3 above, solicitation of perjury is not distinguishable from the use of perjured testimony and is absolutely immune. *See Tate v. Grose*, 412 F.Supp. 487 (E.D.Pa.1976).

■ 7. Rose claims that Smyth and Goodman acted solely pursuant to the in-

structions of defendants Robert Asher and Paul Bartle "under the enticement of defendant's offers to benefit [their] political [careers] and the compulsion of defendants' threats to ruin [their] political [careers]." Amended Complaint, ¶¶ 42(e), 41(g). In determining the scope of immunity, one must examine the conduct of the prosecutor, not the intent or the motivating circumstances. To "foreclose immunity upon allegations that judicial and prosecutorial decisions were conditioned upon a conspiracy or bribery serves to defeat [the] policies" upon which it is based. *Ashelman v. Pope*, 793 F.2d at 1078.

As discussed above, all of the allegations against Smyth and Goodman fall within the scope of judicial immunity. Therefore, Rose's § 1983 claim against both defendants must be dismissed.

### B. § 1983 Statute of Limitations

Plaintiff Rose alleges that defendants deprived him of his first, fourth, fifth, sixth, and fourteenth amendment rights, in violation of 42 U.S.C. § 1983. Plaintiff states that the defendants, "acting under color of law, custom and usage and in their official capacities, deprived plaintiff of his rights, privileges and immunities," the right to "due process, equal protection, liberty, privacy, and an impartial criminal trial, and to be free from baseless arrest and prosecution and malicious use and abuse of process." Amended Complaint, ¶¶ 53–54.

The applicable statute of limitations is derived from *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). There, the Supreme Court analyzed which statute of limitations was to be applied in a § 1983 action against a New Mexico police officer and the Chief of the State Police for unlawful arrest and assault. The Court concluded that a broad characterization of all § 1983 claims for statute of limitation purposes, rather than the application of differing statutes of limitation depending on the specific facts and legal theories of the case, better fits the remedial purposes of § 1983. The Court held that "the statute is fairly construed as a directive to select, in each state, the one most appropri-ate statute of limitations for all § 1983 claims." 471 U.S. at 275, 105 S.Ct. at 1947.

The Court affirmed the appellate court's decision to use the statute of limitations for the tort action for the recovery of damages for personal injuries. The Court cited the language of the Court of Appeals for the Fourth Circuit as persuasive:

In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from "personal injuries."

471 U.S. at 278, 105 S.Ct. at 1948 (citing *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir.1972)). Further, the Court found that Congress in 1871 would have characterized § 1983 as conferring a general remedy for injuries to personal rights. 471 U.S. at 278, 105 S.Ct. at 1948.

The third circuit has followed the Supreme Court's "bright-line approach to the problem of determining what statute of limitations should be applied in § 1983 actions." *Knoll v. Springfield Township School District*, 763 F.2d 584, 585 (3d Cir. 1985). Pennsylvania has a two-year limitations period for actions to recover damages for personal injuries. 42 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp.1984). Plaintiff does not dispute this. The parties' dispute centers around when the plaintiff's cause of action accrued for the purposes of the agreed limitations period.

Federal law determines the date of accrual of a § 1983 cause of action. *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 197 n. 16 (3d Cir.1984). A plaintiff's civil rights cause of action accrues when the plaintiff "knew or had reason to know of the injury that constitutes the basis of [the] action." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982). Through *Sandutch*, the question presented to this court is when could the plaintiff, by exercise of due diligence, have had reason to know of the injury that is the basis of his cause of action. *Drum v. Nasuti*, 648

F.Supp. 888, 903 (E.D.Pa.1986) (cause of action for conspiracy accrued at time plaintiff knew from false testimony of conspiracy); *see also Sandutch,* 684 F.2d at 254 (record establishes that, as a matter of law, plaintiff had reason to know of alleged conspiracy to secure false testimony at time he knew of witness' recantation of incriminating evidence).

Plaintiff's claims of violations of his first, fourth, fifth, sixth, and fourteenth amendment rights rest, in turn, upon his claims of wrongful termination, false arrest, abuse of process, and malicious prosecution. Amended Complaint, ¶¶ 38–46. Therefore, this court must determine when plaintiff knew or had reason to know of these injuries giving rise to the claims.

■ Plaintiff knew or had reason to know of his wrongful discharge on the date he was fired. This occurred in August of 1983. Amended Complaint, ¶ 41(b). The original complaint was filed October 27, 1986 over three years after the cause of action accrued. Thus, the claim is time barred.

Plaintiff knew or had reason to know of his injury arising from his alleged false arrest and defendant's alleged abuse of process when he was charged with criminal activity in March of 1984. Amended Complaint, ¶ 45. This claim is also time barred, as it was brought over two years after the cause of action accrued.

■ Plaintiff argues that his malicious prosecution claim constitutes a "§ 1983 claim for malicious prosecution" and, as such, did not accrue until the underlying criminal proceeding terminated in his favor. Plaintiff relies on a footnote in *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 194 n. 16 (3d Cir.1984), which states that, in the event that a plaintiff has a claim for malicious prosecution, that claim would accrue when the criminal proceedings are resolved in favor of the plaintiff.

First, it should be noted that a cause of action under § 1983 is not made out simply by asserting that a common law tort was committed by a state official. *Bell v. Brennan,* 570 F.Supp. 1116, 1117 (E.D.Pa.

1983) (citing *Cramer v. Crutchfield,* 648 F.2d 943, 945 (4th Cir.1981)). A plaintiff must allege deprivation of a federal right under color of law. *Id.* Therefore, plaintiff's assertion that his claim is a "§ 1983 claim for malicious prosecution" is not technically correct. His claim must be for the alleged violation of his constitutional rights, through the act of malicious prosecution. As such, this court is not bound by the elements of the state common law tort of malicious prosecution in determining when plaintiff's cause of action accrued. As stated above, federal law determines the time of accrual and occurs when the plaintiff knew or had reason to know of the injury which forms the basis of the claim. *Sandutch,* 684 F.2d at 254. The court in *Edwards v. Sotomayor,* 557 F.Supp. 209, 217 (D.P.R.1983), clarified this point when it stated:

> [A]ccrual of an action based on a violation of federal constitutional rights is necessarily tied in to a determination of when the events leading to the federal claim culminated. *Once the violation of a claimant's federal constitutional rights is apparent, the federal cause of action accrues and there is no need to adopt a state accrual standard immersed in state requirements for a tort of malicious prosecution.* To hold that a civil rights action which may be analogized to a tort of malicious prosecution accrues only when criminal proceedings have concluded is to rule that the elements of the constitutional claim as well as its accrual depend on a particular state's configuration of the requirements of the tort of malicious prosecution.

557 F.Supp. at 217. (Emphasis added). The use of the state law definition of accrual may also lead to the inconsistent application of federal law.

The footnote in *Deary* does not control this case. The court of appeals did not fully consider the factors discussed above, nor did it cite any authority for the statement or analyze the facts of the case in light of the federal standard of accrual of "reason to know." As the Supreme Court stated in the recent case of *Felder v. Ca-*

*sey,* "Congress, as we have previously noted, surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Felder v. Casey,* —— U.S. ——, ——, 108 S.Ct. 2302, 2309, 100 L.Ed.2d 1 (1988) (citing *Wilson v. Garcia,* 471 U.S. at 269, 105 S.Ct. at 1943) (federal construction of statute of limitations for § 1983 action preempts state court construction of the statute of limitations applied to § 1983 action tried in state court). The statement in the footnote is mere dicta and is not binding on this court.

Plaintiff argues that the third circuit's opinion in *Weisman v. Insana,* No. 86–1546, slip op. at p. 7–8 n. 3 (3d Cir. April 6, 1987) [817 F.2d 753 (table)], confirms the court's earlier opinion in *Deary.* Plaintiff's argument is incorrect. The court of appeals in *Weisman* stated expressly in footnote 3:

> [Plaintiff], however, argues that his claim in Count Three did not accrue until April 29, 1982, the date of his acquittal, and that the two-year statute of limitations did not bar his malicious prosecution claim. *See Deary v. Three Unnamed Police Officers,* 746 F.2d 185, 194 (3d Cir.1984).
>
> The defendants assert that the only constitutional basis for a malicious prosecution claim is the deprivation of due process, which must have accrued at the time the criminal complaint was filed—September 30, 1980. *We need not resolve this issue here, because, in any event, [plaintiff] has not asserted a meritorious malicious prosecution claim against these defendants.*

*Weisman,* slip op. at 8 n. 3. (Emphasis added).

Finally, plaintiff argues that the important federal interest in comity necessitates that the federal cause of action should be held to accrue only when the state criminal proceedings have been concluded. This argument is without merit. While it is true that a federal court may feel compelled to abstain in certain cases where state proceedings are not yet completed, the better

course is to stay, rather than dismiss, the § 1983 action. *Singleton v. City of New York,* 632 F.2d 185, 192–193 (2d Cir.1980).

I hold that plaintiff had reason to know of his injury due to defendants' alleged malicious prosecution at the time that the criminal complaint was filed against plaintiff—in March of 1984. Because this civil complaint was not filed until October 27, 1986, the federal claim is barred by the two year statute of limitations.

Plaintiff makes a final argument that the complaint alleges an on-going conspiracy to "knowingly and maliciously [lodge] and [prosecute] false criminal charges against plaintiff for which there was no legitimate basis or justification." Amended Complaint, ¶ 25.

The statute of limitations in a conspiracy begins to run from each overt act causing damages. *Drum,* 648 F.Supp. at 903 (citing *Ammlung v. City of Chester,* 494 F.2d 811, 814–815 (3d Cir.1974)). Courts must distinguish between continuing unlawful acts and continued effects from the original violation. In *Sandutch,* the court held that "a continuing violation is occasioned by continual unlawful acts, not continued ill effects from an original violation." 684 F.2d at 254 (citation omitted). The court concluded that the date of accrual began when plaintiff had reason to know of the alleged false testimony in the case and that the continuing ill effects from pre-conviction acts (i.e. his incarceration) do not constitute a continuing tort for the purposes of the accrual. *Id.* In examining this issue in *Singleton v. City of New York,* the second circuit noted:

> [t]o permit [plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

632 F.2d at 192.

When a plaintiff has notice of wrongful conduct, it is not necessary that he have knowledge of all the details or all of the actors involved in order for his cause of action to accrue. *Blanck v. McKeen,* 707

F.2d 817, 819–820 (4th Cir.1983). Based on the allegations of the complaint itself, it is apparent that plaintiff had reason to know of any conspiracy to violate his civil rights when, after defendants allegedly threatened plaintiff with prosecution if he did not perjure himself, criminal charges were filed against him. This occurred in March of 1984—over two years before the original complaint was filed. Thus, the claim is barred by the statute of limitations.

## C.  *Causation*

Defendants contend that the presentment and the findings of Judge Stefan were superseding intervening causes of plaintiff's alleged injuries and, as a result, plaintiff's § 1983 claim for violation of due process must be dismissed. Defendants cite the ninth circuit's decision in *Arnold v. IBM Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981), to the effect that a § 1983 plaintiff must establish "proximate or legal causation," and not "mere causation in fact." In *Arnold,* the plaintiff brought suit against IBM and several of its employees for violation of his due process rights under 42 U.S.C. §§ 1983 and 1985. Plaintiff alleged that defendants conspired with state officials when they failed to disclose exculpatory evidence to law enforcement officials and caused the preparation of the arrest and search warrants, knowing that the facts in the affidavits for those warrants contained misstatements of facts. 637 F.2d at 1354.

The court of appeals held that the district court had correctly dismissed the case because, although plaintiff would not have been arrested but for the involvement of IBM, it was not the legal or proximate cause of his injuries. The court so found based on its conclusion that law enforcement officials conducted a full and independent investigation and that IBM had not controlled or influenced the investigation. Defendants contend that, in the present case, it was not the conduct of the defendants, but rather the issuance of the presentment by the grand jury and the findings of Judge Stefan that constitute the legal cause of plaintiff's alleged injuries.

Plaintiff cites numerous cases which hold that a grand jury indictment or presentment does not suffice as evidence of probable cause for purposes of a malicious prosecution action where the indictment or presentment was procured by fraud, perjury or other corrupt means. *See e.g., Bussard v. Neil,* 616 F.Supp. 854, 857 n. 2 (M.D.Pa.1985); *Crow v. U.S.,* 634 F.Supp. 1085, 1092 (D.Kan.1986).

However, against the presumption of grand jury regularity, *Miller v. Pennsylvania Railroad Co.,* 371 Pa. 308, 89 A.2d 809 (1952), plaintiff has failed to show any evidence that the presentment was based upon something other than testimony or other evidence which witnesses believed to be true at the time information was presented to the grand jury. The amended complaint makes the conclusory allegations that defendants Smyth and Goodman "influenced and directed the grand jury investigating the Montgomery County Sheriff's Department to present false findings implicating plaintiff in such criminal wrongdoing," and that "the grand jury investigation was maliciously corrupted and perverted by defendants to result in a baseless presentment...." Amended Complaint, ¶¶ 41, 41(a). Such unsupported assertions simply do not suffice to make a triable issue in face of the presumption of grand jury regularity.

Rose alleges that defendants asked him to perjure himself in front of the grand jury, but also claims that he *did not perjure* himself. Amended Complaint, ¶ 41(d). Rose further alleges that, "[o]n information and belief, defendants subjected other grand jury witnesses to similar efforts to solicit perjury in investigatory interviews and before the grand jury, and some of these witnesses actually did perjure themselves." Amended Complaint, ¶ 41(e). In addition, plaintiff alleges that "the judge who approved the presentment recommending charges against plaintiff either did not know about defendants' improprieties and unlawful conduct that led to the issuance of the presentment or was part of the defendants' conspiracy." Amended Complaint, ¶ 43. These allegations too are in-

sufficient to survive defendants' motion to dismiss. They are conclusory and lack the specificity required to state a claim under § 1983. Pleading requirements for complaints arising under civil rights statutes must be stated with greater particularity than is generally required under the liberal federal pleading rules in order to prevent frivolous civil rights suits. "Vague and conclusory allegations in a civil rights complaint will not survive a motion to dismiss." *Iseley v. Bucks County*, 549 F.Supp. 160 (E.D.Pa.1982). These allegations do not meet this raised standard of pleading. The presentment avows that the grand jury heard the testimony of over one hundred witnesses and names the witnesses upon which they relied in returning the presentment. In addition, the presentment made by the grand jury, and accepted by Judge Stefan, found probable cause to believe that Sheriff Hill was macing because he would have had to have been "deaf, dumb and blind or physically absent not to be aware of said lottery." Smyth Answer, Ex. A, Grand Jury Presentment, ¶ 10. On the other hand, there is no affidavit evidence from plaintiff or other persons that any other witness was encouraged or coerced by defendants to testify perjuriously before the grand jury and did so, in fact.

Of particular note is the glaring fact that plaintiff's own complaint establishes beyond question that there was probable cause for the investigation conducted by Smyth, Goodman, McNulty, and Vance and the need for a state investigating grand jury probe. Plaintiff admits that before the district attorney's investigation, he had reason to believe that macing was going on in the Sheriff's Department. Employees complained directly to him and he made Sheriff Hill aware of these complaints as being cause for concern. Captain Rebar, a Republican committeeperson and Sheriff's Department employee, was found guilty of 48 counts of macing and four counts of conducting an illegal lottery on February 26, 1986. Plaintiff states that he received complaints about Rebar's activities from department employees on several occasions. These employees were not willing, however, to state for the record that improper pressure was applied to them or to give Rose all the details of such pressure. These facts establish that (1) Rose had probable cause to believe macing was occurring in the department and (2) the the situation was ripe for an official district attorney or grand jury investigation.

Sheriff Hill looked into the employee macing complaints and found "clear evidence that Rebar was macing and conducting illegal lotteries on behalf of the Party. After collecting statements from Department members, Hill *turned the investigation over to the District Attorney's Office.*" Amended Complaint, ¶¶ 37(a-d) (emphasis added).

Thus, plaintiff's own allegations, in conjunction with the findings of the presentment, which has not been shown by plaintiff to be an unreliable statement of probable cause, provide ample evidence of probable cause for defendants Smyth, Goodman, McNulty and Vance to proceed with the investigation. Plaintiff's vague and conclusory allegations that Asher and Bartle "threatened" and "enticed" the district attorney to obtain this result does not overcome this evidence.

Therefore, I conclude that plaintiff has not sufficiently presented any affidavit facts which override the inferences of probable cause fairly derived from his own pleadings. Plaintiff's § 1983 claim based on allegations of malicious prosecution and his state law malicious prosecution claims, therefore, fail.

## II. RICO

### A. *Defendants Smyth, Goodman and Vance*

Plaintiff's RICO claim is dismissed as to defendants Smyth, Goodman, and Vance for failure to state a claim. These three defendants are included in the RICO claim by plaintiff's reallegation of the preceding allegations. Amended Complaint, ¶ 55. In addition, plaintiff alleges:

Other acts of bribery, extortion and "macing" of government employees, contractors and suppliers, examples of which are provided above, have been reg-

ularly engaged in by *defendants* to the point of being widely regarded as routine, and constitute separate acts of "racketeering activity" within the meaning of the statute.

Amended Complaint, ¶ 58 (emphasis added). This single allegation is quite insufficient to state a RICO claim against Smyth, Goodman, or Vance. A RICO claim must include each element of § 1962(a), (b), (c), and or (d). Allegations of "racketeering activity" alone do not suffice.

## B. *Defendants Asher, Bartle, Montgomery County, Republican Party of Montgomery County*

### 1. *Section 1962(a)*

Section 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S. § 1962(a).

Plaintiff alleges that defendants Asher, Bartle, the Republican Party and Montgomery County violated § 1962(a) because they "received income and profited from the above-described pattern of racketeering" and because the Republican Party and the County "aided and abetted in the pattern of racketeering activity." Amended Complaint, ¶ 63. Simply put, plaintiff has failed to state a claim under § 1962(a).

A plain reading of the statute shows that under § 1962(a) plaintiff must show that: (1) the defendant received money from a pattern of racketeering, (2) invested that money in an enterprise and (3) the enterprise was engaged in or affected interstate or foreign commerce. In addition, plaintiff

must show that he was injured by defendants' investment of money into the enterprise and not simply by the pattern of racketeering activity. *See Gilbert v. Prudential–Bache Securities, Inc.,* 643 F.Supp. 107, 109 (E.D.Pa.1986); *Leonard v. Shearson Lehman/American Express, Inc.,* 687 F.Supp. 177, 181 (E.D.Pa.1988).

Plaintiff has only alleged that defendants received income from a pattern of racketeering. He has not alleged any of the other requisite facts. Therefore, plaintiff's § 1962(a) claim must be dismissed.

### 2. *Section 1962(c)*

#### 1. *The Republican Party and Montgomery County*

Section 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

The statute requires that the "person" must be employed by or associated with an "enterprise." *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633–634 (3d Cir.1984).

Plaintiff alleges that the Republican Party of Montgomery County is an "enterprise" within the meaning of RICO. Amended Complaint, ¶ 56. However, plaintiff also alleges that the Republican Party is a defendant, or "person," under RICO. Amended Complaint, ¶ 61. Under RICO, a person charged with a RICO violation cannot be the same entity as the alleged enterprise under § 1962(c). *B.F. Hirsch,* 751 F.2d at 633. *See also Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1359 (3d Cir.1987). Thus, plaintiff's § 1962(c) claim against the Republican Party of Montgomery County must be dismissed as a matter of law.

Plaintiff has not alleged that Montgomery County violated § 1962(c).

## 2. *Asher and Bartle*

Plaintiff's remaining claim under § 1962(c) is against defendants Asher and Bartle for their conduct of the affairs of the Republican Party and the County (the "enterprises") through a pattern of racketeering activity. The United States Supreme Court stated that five elements are necessary to plead effectively a RICO claim:

1. existence of an enterprise;

2. that the enterprise affected interstate commerce;

3. that the defendant was employed by or associated with the enterprise;

4. that he or she participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

5. that he or she participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts.

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985).

### (a) *Requirement that Enterprises Affect Interstate Commerce*

■ Plaintiff has failed to allege adequately that the enterprises, the Republican Party of Montgomery County and Montgomery County, affected interstate commerce. In fact, the enterprises involved in this case are involved only with intrastate activities. On this ground alone, plaintiff's RICO claim fails.

### (b) *Racketeering Activity*

■ Plaintiff has also failed to allege adequately that defendants Asher and Bartle engaged in racketeering activity. Plaintiff contends that defendants Asher's and Bartle's "acts of bribery and extortion against plaintiff, defendants Smyth and Goodman, and co-conspirators Murray and McNulty each constitute instances of racketeering activity within the meaning of 18 U.S.C. § 1961(1)." Amended Complaint, ¶ 57.

Plaintiff further alleges that:

Other acts of bribery, extortion and "macing" of government employees, contractors and suppliers, examples of which are provided above, have been regularly engaged in by defendants to the point of being widely regarded as routine, and constitute separate instances of "racketeering activity" within the meaning of the statute.

Amended Complaint, ¶ 58.

Bribery and extortion may constitute racketeering activity under § 1961(1) if they are (1) chargeable under state law and punishable by imprisonment for more than one year or (2) indictable under 18 U.S.C. § 201. 18 U.S.C. § 1961(1). Because section 201 is concerned with bribery of *federal* officials, I will examine only the state law prohibitions against bribery and extortion which fall under RICO.

The Pennsylvania statute for bribery in official and political matters provides in part:

A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

(1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

18 Pa.Cons.Stat.Ann. § 4701 (Purdon 1983). This statute has been found to constitute racketeering activity under § 1961. *U.S. v. Forsythe*, 429 F.Supp. 715 (W.D.Pa.1977), *rev'd on other grounds*, 560 F.2d 1127 (3d Cir.1977).

Under Pennsylvania law, a person is guilty of extortion if he intentionally obtains or withholds property of another by threatening to:

(1) commit another criminal offense;

(2) accuse anyone of a criminal offense;

(3) expose any secret tending to subject any person to hatred, contempt or ridicule;

(4) take or withhold action as an official, or cause an official to take or withhold action, ...

(6) testify or provide information or withhold information with respect to the legal claim or defense of another; or

(7) inflict any other harm which would not benefit the actor.

18 Pa.Cons.Stat.Ann. § 3923 (Purdon Supp. 1983).

Pennsylvania law also prohibits extortion through threats or other improper influence in official and political matters. The law of the Commonwealth provides a person commits an offense if he:

(1) threatens unlawful harm to any person with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter,

(2) threatens unlawful harm to any public servant with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding; or

(3) threatens unlawful harm to any public servant or party official with intent to influence him to violate his known legal duty.

18 Pa.Cons.Stat.Ann. § 4702 (Purdon 1983).

Specifically, plaintiff alleges that Asher and Bartle improperly pressured plaintiff and Sheriff Hill on the issue of raising money for the Republican Party. Amended Complaint, ¶¶ 35, 35(a), 35(b). He alleges that Bartle "spent much of the [time in meetings] complaining that Sheriff's Department personnel were not buying enough tickets to Party-sponsored events" and that he told Sheriff Hill and the plaintiff that "they and the Department employees owed their jobs to the Party." Amended Complaint, ¶ 35(a). These allegations do not rise to the level of state law bribery or extortion. While these statements may be construed as threatening, interfering, and perhaps "macing", they cannot be construed as RICO bribery or extortion.

"Macing" is prohibited under Pennsylvania law under 25 Pa.Stat.Ann. § 2374 (Purdon 1963). The statute provides in part:

It shall be unlawful for any political committee or any member, employee or agent thereof, or for any public officer or employee, ... directly or indirectly, *to demand from any public officer*, subordinate or employee holding any office or position of trust or profit under this Commonwealth ... *any assessment or percentage of any money or profit ... with the understanding, express or implied, that the same may be used or shall be used for political purposes....*

25 Pa.Stat.Ann. § 2374 (Purdon 1963).

As indicated in the statute, there is no requirement that the victim be threatened with harm if he does not comply. Such a requirement does exist in the extortion statutes. *See* 18 Pa.Cons.Stat.Ann., § 3923(a)(7); 18 Pa.Cons.Stat.Ann. § 4702(a)(1), (2), (3).

Macing does not constitute racketeering activity under § 1961. As discussed above, section 1961 defines racketeering activity as, *inter alia*, (1) bribery or extortion, (2) chargeable under state law and (3) punishable by imprisonment for more than one year. 18 U.S.C. § 1961(1). 25 Pa.Stat.Ann. § 2375 provides that any person convicted of violating the "macing" statute, § 2374, shall be guilty of a misdemeanor and shall be sentenced to imprisonment for a term not exceeding one year. Therefore, the Pennsylvania "macing" statute does not constitute racketeering activity as defined in § 1961(1). RICO is intended to forbid racketeering activity, not state offenses per se. *U.S. v. Frumento*, 563 F.2d 1083 (3d Cir.1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978).

Next, plaintiff alleges that Asher "complain[ed] about the Sheriff's policy of not releasing Committeepersons to do Party work while on duty", "instructed plaintiff to attend an upcoming Party event", told plaintiff he "expected '100% cooperation' from plaintiff and his employees", and "de-

manded that plaintiff contribute $250 for a campaign advertisement." Amended Complaint, ¶ 35(b). These demands, including that plaintiff contribute $250 to the Party, cannot be construed as extortion. There are no allegations that plaintiff was threatened with "unlawful harm," or harm of any sort, if he did not cooperate with Asher's demands. Absent such allegations of harm, Asher's behavior can only be viewed as interference with the Sheriff's office or as "macing"—neither of which constitutes racketeering activity under § 1961(1).

■ Plaintiff claims that defendant Asher's conviction for official bribery in the United States District Court for the Middle District of Pennsylvania for the solicitation of a $300,000 bribe to the State Republican Party constitutes an instance of racketeering activity. Amended Complaint, ¶ 59. This claim is without merit. RICO requires that the defendant participated in the affairs of an enterprise—in this case both Montgomery County and the Republican Party of Montgomery County—through a pattern of racketeering activity. *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. Asher's conviction for bribery, while it does technically constitute racketeering activity under § 1961(1), is not alleged to have been related to Asher's participation in the affairs of the alleged enterprises in this case. Montgomery County and the Republican Party of Montgomery County are separate entities from the State Republican Party.

■ Finally, plaintiff claims that the alleged malicious prosecution and abuse of process by Smyth, Goodman, McNulty and Vance were results of specific instructions by Asher and Bartle and "under the enticement of their offers to benefit [defendants'] political career[s] and the compulsion of their threats to ruin [defendants'] political career[s], rather than acting pursuant to any legitimate law-enforcement purpose." Amended Complaint, ¶ 41. Plaintiff contends that Smyth was to be made a court of common pleas judge and that both Goodman and McNulty were promised the office of district attorney. Amended Complaint, ¶¶ 42(b), 42(e), 47.

Plaintiff's evidence of these allegations comes from statements made to him by defendants Smyth, Vance, and McNulty. Plaintiff had no direct contact with Asher and Bartle on the issue of Sheriff Hill's prosecution. Plaintiff relies on defendant Goodman's statements that the Party wanted Sheriff Hill out of office and that Asher and Bartle would be "greatly appreciative" if plaintiff would give certain testimony, which Goodman allegedly knew to be false, against Hill. Amended Complaint ¶ 41(d). Plaintiff also relies on Smyth's alleged statement that, if plaintiff provided the needed testimony, "he would speak to Bartle and Bartle would give plaintiff his job back." Amended Complaint, ¶ 41(d). These alleged statements do not constitute bribery or extortion. Plaintiff has not shown that Asher or Bartle knew the testimony to be false. Plaintiff only alleges that Goodman knew the testimony to be false. Absent evidence that Bartle knew the requested testimony to be false, there is no basis to conclude that Bartle would offer to reinstate plaintiff for perjury as opposed to material witness cooperation and honesty. In addition, plaintiff's allegation that Goodman told him that Bartle would give him his job back does not constitute bribery. At best, it is a prediction of what Bartle might do. There is no allegation that Bartle, who had the power as County Commissioner to reinstate, had, in fact, made such a promise to Rose.

Plaintiff claims that, "upon information and belief, defendant Goodman acted on, along with their threats, the promises of defendants Asher and Bartle to make him the new District Attorney." Amended Complaint, ¶ 41(g). Plaintiff also claims that Smyth told him, "I have a judgeship on the line," and that Smyth told him that he was under great pressure from Asher and Bartle to get Sheriff Hill out of office by any means and that the whole prosecution would end if Hill would step aside. Amended Complaint, ¶ 42(b).

Plaintiff also alleges that defendant McNulty was also acting on the promises of Asher and Bartle to make him the new District Attorney and that McNulty told the plaintiff that he "shouldn't have to go

through this," and that it was "ridiculous" that the criminal justice system was being used for political purposes. Amended Complaint, ¶ 46, 47.

These alleged statements do not constitute bribery. Statements or "information" regarding potential promotions does not constitute evidence of requests by Asher or Bartle that the defendants improperly exercised their official discretion or violate their known legal duties. 18 Pa.Cons.Stat.Ann. § 4701(a)(2), (3) (Purdon 1983). Likewise, the statements that Asher and Bartle wanted Sheriff Hill "out of office by any means" and that the prosecution would end if Hill stepped aside are not evidence of improper exercise of discretion or duty. These statements suggest only that Asher and Bartle wanted Hill out of office, not that they wanted him out of office for any improper purpose. Plaintiff's vague and conclusory allegations as to Asher's and Bartle's motives in their support of the criminal prosecution are insufficient to support his RICO claim.

Finally, plaintiff contends that Asher and Bartle had daily unlawful discussions with District Justice Murray and improperly pressured him to hold plaintiff over for trial following his preliminary hearing with both promises of helping and threats of ruining his political career. Amended Complaint, ¶¶ 49, 50. Plaintiff has submitted no evidence of extortion or bribery by Asher and Bartle in connection with Justice Murray. Plaintiff's allegations are made "upon information and belief" and do not approach the standard of pleading required under RICO.

Moreover, plaintiff has not shown that Asher and Bartle were pressuring Justice Murray to violate his legal duties in any way. At a preliminary hearing, the prosecution has the burden of establishing sufficient probable cause to hold the case over against the defendant. *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978). If the prosecution establishes a prima facie case, the magistrate *must* hold the case over for trial. A prima facie case is one which has proceeded upon sufficient proof to the stage where it will support a finding

of probable cause *if evidence to the contrary is disregarded.* Black's Law Dictionary 1071 (5th ed. 1979) (emphasis added). Nothing in plaintiff's complaint or Rose's affidavit evidences that there existed a complete lack of probable cause. Plaintiff's allegations that witnesses for the prosecution, including Michael Rebar and John Tomaselli, were impeached and discredited does not in any way establish the absence of probable cause. Probable cause does not mean proof beyond a reasonable doubt or even proof beyond a preponderance of the evidence. Internal contradictions in the testimony do not negate the existence of probable cause.

In addition, Justice Murray's alleged comments that "he considered the prosecutor's case to be baseless," and "founded on perjured testimony," Amended Complaint, ¶¶ 51–52, may constitute expressions of personal opinion on the case but do not override, or even contradict, his finding that the prosecution had presented sufficient evidence to proceed to trial.

### (c) *Pattern*

█ Assuming, arguendo, that plaintiff's allegations of "enticements" and "threats" constitute racketeering activity within the meaning of § 1961(1), plaintiff's claim must still be dismissed for failure to allege a pattern of racketeering activity. RICO Section 1961(5) states that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The third circuit has rejected notions that a plaintiff must allege at least two schemes and that a single scheme must be on going or open-ended. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36 (3d Cir.1987). In *Barticheck,* the court concluded that a case-by-case "inquiry into the extent of the racketeering activity" must be conducted. *Barticheck,* 832 F.2d at 40. A determination of whether the facts alleged constitute a pattern turns on, but is not limited to, the following factors: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number

of perpetrators; and (6) the character of the unlawful activity. *Id.* at 39.

The third circuit developed the *Barticheck* test as a result of the Supreme Court's now famous footnote in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Supreme Court stated:

> The legislative history supports the view that two isolated acts of racketeering do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

In *Barticheck,* twenty-three plaintiffs filed suit alleging that they were fraudulently induced to invest in a fraudulent money-making venture. The defendants were an oil and gas drilling partnership, a bank, and two officers of the bank. Plaintiffs alleged that the partnership and the bank officers made material misrepresentations to the plaintiffs regarding the risks of investing in the partnership and the bank's role in the venture. The district court held that the allegations were not sufficient to form a pattern and the appellate court reversed. However, the appellate court held that the allegations did meet the RICO pattern requirement because the scheme was carried out by several individuals and two separate entities and "most significantly, the scheme involved the repetition of similar misrepresentations to more than twenty investors." *Barticheck,* 832 F.2d at 39.

In *Marshall–Silver Construction Co. v. Mendel,* 835 F.2d 63 (3d Cir.1987), the third circuit upheld the dismissal of a RICO claim for failure to allege a pattern. The plaintiff, a general contractor, alleged that defendants fraudulently forced it into bankruptcy. The contractor specifically alleged that an engineering firm threatened to destroy it when there was a refusal to pay the engineering firm for substandard work. The engineering firm, and two other subcontractors, then filed a petition for involuntary bankruptcy against plaintiff which, plaintiff alleged, contained allegations which were known to be false when made. The defendants allegedly contacted the press in order to publicize plaintiff's bankruptcy. As a result of bad publicity, plaintiff was unable to obtain the construction bonds it needed to proceed with its projects and was put out of business.

The court concluded that the facts in *Marshall–Silver* did not meet the *Barticheck* pattern requirement because:

> the target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration and objectives poses ... a threat of a series of injuries over a significant period of time.

*Marshall–Silver,* 835 F.2d at 66–67. The court concluded that the allegations were insufficient because they involved "a single victim, a single injury, and a single, short-lived scheme with only two active perpetrators." 835 F.2d at 67.

In connection with the present case, plaintiff has alleged that Asher and Bartle bribed and/or extorted Smyth, Goodman, Vance, McNulty, and Justice Murray in an effort to oust Sheriff Hill and his top assistants from office. Plaintiff has also alleged various past macing, aside from the scheme in question in an effort to establish a pattern. As discussed above, macing is not racketeering activity under RICO § 1961(1) and cannot be considered in determining whether a pattern exists. *See* Amended Complaint, ¶¶ 29(a), 29(b), 30.

Plaintiff's allegations that Asher and Bartle pressured the Sheriff's Department to (1) allow personnel to do County Republican Party work on County time, (2) hire, fire, and discipline employees according to their instructions, and (3) use contractors that were major contributors to the Republican Party also cannot be considered in determining whether a pattern existed. Plaintiff has not adequately al-

leged anything beyond pressure by Asher and Bartle. Absent allegations that (1) money or property was withheld by threatening harm or (2) that Asher and Bartle threatened unlawful harm to Sheriff Department personnel with the intent to influence the personnel's discretion or to influence him to violate his known legal duty, these allegations do not constitute racketeering activity. No such allegations have been made and plaintiff's amended complaint fails to state a claim on this count.

■ Finally, plaintiff also alleges that, at Asher's and Bartle's request, he was not paid for six weeks because they disapproved of his appointment as Chief Deputy. I do not find that this constitutes extortion. An individual is guilty of extortion if he or she obtains or withholds property by threatening to inflict harm upon the actor. 18 Pa.Cons.Stat.Ann. § 3923 (Purdon Supp. 1982). Plaintiff's amended complaint is completely lacking in any allegations that Asher and Bartle withheld the salary by threatening harm to plaintiff or Sheriff Hill. It appears from the face of the complaint that this was a dispute over whether Sheriff Hill or County Commissioner Bartle had the authority to hire the Chief Deputy.

■ Assuming, arguendo, that this incident does constitute extortion, plaintiff has still failed to allege a pattern. Plaintiff has successfully alleged only six potential acts of extortion or bribery—the temporary withholding of plaintiff's pay in 1979, and the extortion or bribery of Smyth, Goodman, Vance, McNulty, and Justice Murray in 1983 to falsely prosecute Sheriff Hill and his top assistants for macing. Plaintiff has alleged an isolated incident which occurred in 1979 and a single scheme with a single goal which occurred in 1983. The extent of this "racketeering activity" does not meet the "continuity" requirements of *Sedima*. *See Barticheck*, 832 F.2d at 40. The activity is not the type which, "because of its organization, duration, and objectives poses ... a threat of a series of injuries over a significant period of time." *Marshall–Silver*, 835 F.2d at 66–67.

### 3. *Section 1962(d)*

Finally, plaintiff has alleged a conspiracy between Asher, Bartle and the Republican Party to engage in the conduct of Montgomery County's affairs and a conspiracy between Asher and Bartle to engage in the affairs of the County and the Republican Party in violation of 1962(d). Amended Complaint, ¶ 62. Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). RICO conspiracies must be pleaded with specificity. "It is a longstanding rule in the Third Circuit that a mere general allegation of conspiracy is insufficient." *Kalmanovitz v. Heileman Brewing Co., Inc.*, 595 F.Supp. 1385 (D.Del.1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985). Plaintiff's § 1962(d) claim is dismissed.

### III. PENDENT STATE LAW CLAIMS

Since the federal causes of action are dismissed, plaintiff's pendent state claims shall be dismissed for lack of federal jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of July, 1988, it is hereby ORDERED that defendants' motions to dismiss are GRANTED.

Accordingly, plaintiff's complaint is DISMISSED with prejudice, except that the state law claims are DISMISSED without prejudice to their being brought in a proper forum.